## PHILYAW v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
November 2, 1928.

Rehearing Denied December 31, 1928.

No. 8098.

J. M. Carter and B. E. Carter, both of Texarkana, Ark., for plaintiff in error.

S. S. Langley, U. S. Atty., and W. N. Ivie, Asst. U. S. Atty., both of Ft. Smith, Ark.

Before BOOTH, Circuit Judge, and POLLOCK and DEWEY, District Judges.

DEWEY, District Judge. The defendant was indicted for removing and concealing distilled spirits. There was a verdict of guilty and judgment rendered thereon. Defendant has appealed.

Plaintiff in error, hereinafter referred to as the defendant, was indicted by the grand jury in the District Court of the United States for the Western District of Arkansas, Texarkana Division, at the November, 1927, term thereof, upon four counts.

The defendant challenged the sufficiency of each of the counts of the indictment by demurrer, and the demurrer was sustained as to the first and second of said counts. Error is assigned and argued on the ruling of the court as to the third and fourth counts of the indictment, which read as follows:

"Third Count: And the grand jurors aforesaid, on their oath aforesaid, do further present that Dave Philyaw, on or about April 15, 1927, in Miller county, Arkansas, in the said division of said district and within the jurisdiction of said court, unlawfully, knowingly and feloniously did remove and aid and abet in the removal of distilled spirits on which the tax had not been paid, to wit, 155 gallons, more or less, of whisky, to a place other than a distillery warehouse provided by law, to wit, to a place on his farm in Miller county, Ark., contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

"Fourth Count: And the grand jurors

aforesaid, on their oath aforesaid, do further present that Dave Philyaw, on or about April 15, 1927, in Miller county, Arkansas, in the said division of said district and within the jurisdiction of said court unlawfully, knowingly and feloniously did conceal and aid in the concealment of distilled spirits, to wit, 155 gallons, more or less, of whisky upon which the tax had not been paid, which said whisky had been removed from a distillery to the grand jurors unknown to a place other than a distillery warehouse provided by law, to wit, to a place on his farm in Miller county, Ark., contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The question presented is whether each count states facts sufficient to constitute an offense against the laws of the United States.

■ The statute under which this indictment is drawn is section 404, title 26, of the U. S. Code (26 USCA § 404), which provides:

"Whenever any person removes, or aids or abets in the removal of, any distilled spirits on which the tax has not been paid, to a place other than the bonded warehouse provided by law, or conceals or aids in the concealment of any spirits so removed, * * * he shall be" punished, etc.

The above section of the U. S. Code is taken from section 3296 of the Revised Statutes; the only difference in the wording of the U. S. Code and in the Revised Statutes being the words "bonded warehouse" used in the Code, and "distillery warehouse" in the Revised Statutes.

Defendant claims that no offense against the laws of the United States is charged in the indictment, because it charges a removal to a place other than a "distillery warehouse," while the law makes it an offense only to remove to a place other than a "bonded warehouse."

From a careful reading of the Revenue Law, the context of which the above-quoted statute is a part, it is apparent that the term "bonded warehouse," used in the statute, refers to a "distillery warehouse," and hence the indictment, in charging the place of removal to a place other than a "distillery warehouse," instead of to a place other than a "bonded warehouse," charges the offense of the statute. This has been so decided in the case of Pounds v. United States, 171 U. S. 35, 18 S. Ct. 729, 43 L. Ed. 62.

The fourth count of the indictment in this case is identical with the language of the indictment in the Pounds Case, supra, and under the holding therein, that the charging of the offense in the language of this statute is sufficient, defendant's further arguments as against the indictment are answered. Under this authority we are constrained to hold that the court was correct in overruling the demurrer to counts 3 and 4 of the indictment.

■ The plaintiff in error also makes the claim that the evidence introduced at the trial was insufficient to justify a conviction on either counts 3 or 4 of the indictment; that the court erred in refusing to sustain a motion for a directed verdict of "not guilty" as to each of said counts.

The testimony, in substance, is that two government agents, O'Quinn and Lambert, on April 5, 1927, went to defendant's residence, and on inquiry were told by defendant that he had some good whisky that he would sell and that he got a new five-gallon keg and with the statement, "I will have to go down there and get the whisky," "there is a nigger down there," got in his car and drove about a quarter of a mile; there was a row of houses on the left of the road, and he went into the second house with the keg, remained about 10 minutes, and came back with the whisky, which was paid for by the agents; that on his return with the whisky he said, "the nigger was off fishing," and "it took some time to get it." There was no stamp on the keg.

A few days later, on April 10, the state and government officers went down to defendant's residence without a search warrant. They had the information that the whisky was in the house and they drove there and found two negro girls. This was at the second house from Dave Philyaw's home, going west. The girls said they did not know who lived there, as they lived in town. There were two beds in the house, and a Victrola which the girls were playing. The officers got a ladder and in the loft of this house found 150 gallons of whisky in 10-gallon kegs, which was thrown out and destroyed.

This was a two-room house and located about a quarter of a mile from Dave Philyaw's residence. The officers got Philyaw and brought him down. On another day, a short time before this, one of the witnesses made an investigation of these houses on this road. This road makes a circle around through Dave Philyaw's plantation, and there are houses all along the road. About 200 or 300 yards from the shack where the whisky was found, there were a number of empty kegs up in an old building, and just behind that house was another house that had been used as a distillery. This was an old distillery house, where whisky had been manu-

factured, and there was a pit where still slops had been thrown, and which gave out an odor which showed that it was distillery slop.

About a quarter of a mile from this house was a new house that had a number of copper fermenting vats, such as are used in a distillery, a number of barrels which had been used for fermenting, and "a right smart of material there of one kind or another." In still another house near by was a small still pot, which fit in a small furnace in the house. This was about half a mile from the defendant's residence.

These are the facts and circumstances on which the court submitted to the jury, for its decision, defendant's guilt or innocence as to the offenses charged in count 3 and count 4 of the indictment. To warrant the jury in finding the defendant guilty, they must have found that the defendant either removed this whisky or aided or abetted in removing it, or concealed or aided in the concealment of whisky so removed, that was in the building where found.

There is no direct evidence that the defendant had anything to do with the removal or concealment. The most that could be said is that the whisky must have been removed by some one from the place where distilled. The only evidence connecting the defendant with the charge is that, a few days before the whisky was found, he said he had some liquor to sell, and sold some, which he obtained from this house; that the whisky was found in a house located on a plantation owned by him, and that in several houses located on the same plantation was evidence that liquor had at some recent time been distilled therein.

■ Evidence creating a mere probability of guilt is not sufficient; much less is evidence which gives rise to a mere suspicion or conjecture of guilt. 16 C. J. 767.

■ In a criminal case, there must be evidence of all the material facts alleged in the indictment, or evidence from which a natural and proper inference can be drawn that such facts actually existed. It is a well-recognized rule in all jurisdictions that, to warrant a conviction upon circumstantial evidence alone, the facts proven must not only be consistent with the guilt of the accused, but they must also be inconsistent with any rational theory of his innocence. Wagner v. U. S. (C. C. A.) 8 F.(2d) 581; U. S. v. Greene et al. (D. C.) 146 F. 803; Vernon v. U. S. (C. C. A.) 146 F. 121.

It is not sufficient that the facts coincide and render probable the guilt of the accused, but they must exclude every other reasonable hypothesis. Weighing the facts by the above rules, we are unable to agree with the trial judge that the case should have been submitted to the jury. From these facts it is just as probable that the liquor was removed and placed in the attic of this house by some person other than the defendant as that it was removed and so placed by him.

There is evidence from which it could be properly assumed that the defendant owned the liquor found. But wherein are the facts from which a natural inference can be drawn that he removed it or concealed it after removal, unless it be an assumption based upon an assumption?

■ The charge of concealment must be supported by some evidence that the defendant actually took part or aided or directed the concealment. It implies affirmative action; something more than a mere failure to disclose. 12 C. J. 374. The facts tend to establish that the defendant was guilty of maintaining a liquor nuisance and selling intoxicating liquor; but an attempt has been made here to pick out one of the revenue laws that would warrant a judgment of commitment to the penitentiary, rather than a misdemeanor providing only for a jail sentence.

The acts of Congress under which this indictment was drawn were passed long prior to the present Volstead Act, and were based upon regulations of the liquor traffic from a recognized distillery. The facts in the case are not unlike those in Wagner v. U. S., supra, wherein is cited the rule that: "It is well established that the basis of a presumption must be a fact, and that one presumption cannot be the basis of another presumption."

■ Another question raised by the defendant is that the court erred in holding it was immaterial, under the situation presented, whether the whisky was found in Miller or Lafayette county. This court has so often passed upon this question that we do not feel it is necessary to again enter upon its discussion. Flack et al. v. U. S. (C. C. A.) 272 F. 680. See Day v. U. S., 28 F.(2d) 586, decided September 29, 1928, at this term of court.

Defendant also claims the court erred in permitting the introduction of testimony as to what was found by the officers in their search of defendant's premises; such search having admittedly been made without a search warrant. The evidence was introduced into the record with very little objection, the trial court stating that the objection was not as yet pertinent. The defendant in error insists that the proper method of procedure would

have been a motion before the trial to suppress the use of this evidence. Rossini v. United States (C. C. A.) 6 F.(2d) 350; Segurola et al. v. U. S., 275 U. S. 106, 48 S. Ct. 77, 72 L. Ed. 186; Rosenberg v. U. S. (C. C. A.) 15 F.(2d) 179.

On the ground, therefore, that the testimony introduced at the trial was not sufficient to warrant the submission of the case to the jury, the action of the court in overruling the defendant's motion to direct a verdict was erroneous, and the case is reversed and remanded.