SCOTT v. UNITED STATES.

No. 2919.

Circuit Court of Appeals, Tenth Circuit.

Oct. 16, 1944.

Rehearing Denied Nov. 14, 1944.

Writ of Certiorari Denied Jan. 29, 1945.

See 65 S.Ct. 561.

Thos. W. Champion, of Ardmore, Okl. (Louis A. Fischl, of Ardmore, Okl., on the brief), for appellant.

Marvin Shilling, of Muskogee, Okl. (Cleon A. Summers, of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By an indictment containing five counts, returned in the District Court for the Eastern District of Oklahoma on February 29, 1944, the appellant L. J. Scott, together with Robert Cabe and Sarah A. Ives, was charged (1) with having in his possession, custody, or under his control, a nonregistered still, or distilling apparatus, Section 2810, 26 U.S.C.A.Int.Rev.Code; (2) carrying on the business of a distiller without giving bond, Section 2833, 26 U.S.C.A. Int. Rev.Code; (3) working at a nonregistered distillery, Section 2831, 26 U.S.C.A.Int.Rev. Code; (4) making and fermenting wort or mash fit for distillation and production of spirits or alcohol, Section 2834, 26 U.S.C. A.Int.Rev.Code; and (5) the possession of nontax-paid liquor, Section 2803, 26 U.S.C. A. Int.Rev.Code.

Cabe entered a plea of guilty to all counts of the indictment, and on a trial to a jury, Sarah Ives was acquitted on all counts and appellant was convicted on counts 1, 2 and 5. He was sentenced to the custody of the attorney general for a period of two years on each count, to run concurrently, and has appealed from that judgment, contending that the evidence is wholly insufficient to support the verdict of the jury, and that the trial court should have sustained the motion for a directed verdict of not guilty on all counts of the indictment.

The United States moved to dismiss the appeal on the grounds that it was not taken within five days after entry of the judgment as required by Rule 3 of the Rules of Criminal Procedure, 18 U.S.C.A. following section 688, which provides in substance that an appeal from a judgment in a criminal case shall be taken within five days after the entry of judgment of conviction, or the denial of a timely motion for a new trial, by filing with the clerk of the trial court a notice in duplicate stating that the defendant appeals from the judgment, and by serving a copy of the notice upon the United States attorney. Motion for new trial in this case was overruled, and judgment and sentence was entered on March 8, 1944, whereupon the defendant by counsel served notice of his intention to appeal in open court, and on March 11, 1944, filed formal notice of appeal with the clerk of the trial court, but did not serve the notice upon the United States attorney in accordance with the rule until March 20, which was more than five days after the entry of judgment.

The filing of notice of appeal with the clerk of the trial court within five days after entry of the judgment, or the denial of a timely motion for new trial, as required by the rule, is jurisdictional, and formal compliance is an essential prerequisite to the perfection of an appeal. But while good practice requires the service of a copy of the notice upon the United

States attorney, it is not a jurisdictional prerequisite to the perfection of an appeal, and the failure to formally comply with the rule in that respect does not deprive the appellate court of jurisdiction to hear and determine the appeal if it is otherwise properly lodged. Weinstein v. Black Diamond S. S. Corp., 2 Cir., 31 F.2d 519; Wilson v. Byron Jackson Co., 9 Cir., 93 F. 2d 577. Cf. Crump v. Hill, 5 Cir., 104 F. 2d 36. No prejudice resulted from the failure to notify the United States attorney within the five days, and we hold that the appeal is not defeated by failure to formally comply in that regard.

The verdict of the jury is based upon circumstantial evidence which was submitted to it under appropriate instructions of the court, and in summary is as follows: Lewis Baldwin owned 40 acres of land about 22 miles northwest of Broken Bow, Oklahoma, in a sparsely settled mountainous country, on which was located a two-room dwelling house and three small outbuildings. Early in 1943, he rented it furnished to the appellant for $10 per month, who stated that he intended to use it in the business of buying and selling cattle and hogs. The cattle and hog business proved unsuccessful, and the deer and hogs ate up what he had planted, and he subrented the place to his codefendant Cabe, who had hitchhiked there and began living in the two-room place with codefendant Sarah Ives, who was the daughter of Baldwin, and the fiance of appellant Scott. On October 8, 1943, the officers found a still about 225 yards from the house. At the still site, they found a small quantity of spirits, some empty 10-pound sugar sacks, and a quantity of empty syrup cans. Near the path which led from the house to the still, they found another container partially filled with liquor, and in the loft of the house 108 gallons of nontax-paid spirits in one-gallon containers packed in paper cartons. In an outhouse near by, they found 162 gallons of syrup similar to that which had been used at the still.

A Chevrolet automobile was parked on the east side of the house, and in it was four 10-pound sacks of cane sugar, a pair of trousers, and shoes. The officers found no one at the still or at the house, but soon thereafter Sarah Ives appeared on the scene. After her arrest, she inquired if the officers had a search warrant, but denied any knowledge of the still which was found near by, the syrup in the outhouse, or that the cartons in the loft of the house contained liquor. She testified that she saw Cabe put the cartons there from time to time, and when she asked him what it was, he did not answer and she concluded it was canned fruit.

Scott admitted that the Chevrolet automobile at the place belonged to him, and that the trousers and shoes were also his, but denied any knowledge of or connection with the still or liquor. He stated that he had taken Sarah Ives to a doctor near Asher, Oklahoma, and returned by way of her sister's home, and that her sister had given her the sugar found in the car in exchange for fruit which Sarah Ives had canned for her. In this respect he was corroborated by Sarah Ives, and Cabe, having entered his plea of guilty, denied that Scott knew anything about the still or was in any way interested or connected with it. There was also testimony to the effect that Scott was "in and out" of the place during the time that Cabe and Sarah Ives were living there, and also that Scott was working for his cousin at Pilot Point, Texas, whenever the weather permitted. After their arrest and the return of the indictment, and before the trial of the case, Sarah Ives and Scott were married.

There is no direct evidence to connect the appellant with the still, its operation, or the possession of the nontax-paid liquor found in the house. No one testified of having seen him at the still, or that he was in any way connected with it. The verdict of the jury rests upon inferences drawn from the admitted facts that he had leased the premises from the owner; that his fiance, whom he later married, was living in the house when the still was found; that his car was there with his clothes and four 10-pound sacks of cane sugar, which was susceptible to use in the manufacture of alcoholic spirits, and that he was "in and out" of the place while the still was in operation. The jury was asked to believe that although he rented the place, and his fiance lived in it with her two small children, she lived there with Cabe while Cabe was operating the still without appellant's knowledge within 225 yards of the house, and that 108 gallons of nontax-paid whiskey was stored in the loft of the house without his or her knowledge. The jury chose to disbelieve the testimony of appellant and his codefendants, and to base its verdict upon inferences drawn from established facts and circumstances.

Circumstances which point to guilt or innocence are equally as competent and sometimes more infallible than direct or testimonial evidence, and rational inferences drawn from established facts and circumstances are oft times more cogent and convincing than direct or testimonial evidence of the particular facts sought to be proved or denied, provided that the circumstances relied upon are wholly consistent with guilt and inconsistent with any other reasonable hypothesis. Ex parte Jefferies, 7 Okl.Cr. 544, 124 P. 924, 41 L.R.A., N.S., 749; Kassin v. United States, 5 Cir., 87 F.2d 183, 184. See also Vol. I, Wigmore on Evidence, 2d Ed., Sections 25 and 26. In arriving at its conclusions the Jury may not speculate upon the guilt of the defendant, or choose between equally permissive inferences of guilt or innocence, Philyaw v. United States, 8 Cir., 29 F.2d 225, Gerson v. United States, 10 Cir., 25 F.2d 49, 56, but it does have the right and duty to judge the facts in the light of standards of human conduct, and to disregard that which appeals neither to reason nor experience.

In determining the legal sufficiency of the evidence, it is not the province of this court to weigh it or to judge the credibility of the witnesses, or the inferences which the jury has drawn from established facts and circumstances, so long as its processes of deductive reasoning are in accordance with prescribed legal standards. See Rogers v. United States, 10 Cir., 129 F.2d 843. From the facts and circumstances submitted to it, the jury was persuaded beyond a reasonable doubt, or to a moral certainty, that the appellant had in his possession, custody or under his control, the still or distilling apparatus, found on the premises which had been leased to him; that he was carrying on the business of a distiller without giving a bond, and had in his possession the nontax-paid liquor which was found in the loft of the house on the leased premises.

We hold that the evidence is legally sufficient and the judgment is affirmed.

PHILLIPS, Circuit Judge (dissenting).

It is my opinion that the evidence which is fully and accurately stated in the majority opinion did not warrant a verdict of guilty on counts 1, 2 and 5. At most, it seems to me the evidence created a suspicion of guilt but that is not enough.[1] In order to support a verdict of guilty resting wholly upon circumstantial evidence, such evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. It must establish not merely the possibility or probability of guilt, but guilt to a moral certainty.[2]

---

[1] Spalitto v. United States, 8 Cir., 39 F. 2d 782, 784; Philyaw v. United States, 8 Cir., 29 F.2d 225, 227; Kassin v. United States, 5 Cir., 87 F.2d 183, 184.

[2] Kassin v. United States, supra, 87 F. 2d at page 184; Cochran v. United States, 8 Cir., 41 F.2d 193, 206; Cartello v. United States, 8 Cir., 93 F.2d 412, 414; United States v. Russo, 3 Cir., 123 F.2d 420, 423.