UNITED STATES, Appellant

v.

MICKEY McCRARY, Private, U.S. Air Force, Appellee

1 USCMA 1, 1 CMR 1

■

No. 4

Decided November 8, 1951

LT. COL. Jean F. Rydstrom, USAF and CAPT. William E. Shannon, USAF, for Appellant.

COL. Abner E. Lipscomb, USAF, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused in this case left his station at Camp Stoneman, California, on October 23, 1950, and surrendered to the Air Police, Brookley Air Force Base, Alabama, on December 22, 1950. He was tried by court-martial at Keesler Air Force Base, Mississippi, and was found guilty of the charge of desertion in violation of Article of War 58. He was sentenced to a dishonorable discharge, to forfeit all pay and allowances to become due after the date of the order directing execution of the sentence, and to be confined for one year and six months. The reviewing authority approved the sentence but reduced the period of confinement to six months and suspended the dishonorable discharge. The Board of Review in the

office of the Judge Advocate General of the Air Force sustained the finding and approved the sentence as reduced. The Judge Advocate General of the Air Force certified the case to this court in accordance with the provisions of Article 67 (b) (2) of the Uniform Code of Military Justice (Act of May 5, 1950, 64 Stat. 108, 50 U.S.C. §§ 551–736) for review.

The question certified for determination is whether, as a matter of law, the facts are sufficient to sustain the conviction.

In view of the fact that this is the first written opinion published by this court we deem it advisable to set forth a few well-known principles of law which govern the scope of our review.

**2**

We mention these principally to set a pattern for future cases which will reach this court by petition or certification.

It is the cardinal rule of law that questions of fact are determined in forums of original jurisdiction or by those which are expressly granted the authority by constitution or statutes. Usually, appellate tribunals are limited to correction of errors of law. 24 C. J. S., Criminal Law, § 1880, states the general rule in criminal cases to be as follows.

"It is the policy of the law, sometimes expressed in constitutional and statutory enactments, that questions of fact shall be determined solely by the jury under the supervision of the trial court. Unless otherwise regulated by constitutional or statutory enactments, ordinarily, and statutes and constitutions sometimes expressly so provide, an appellate court reviews questions of law only and not questions of fact. The appellate court ordinarily has nothing to do with the weight of the evidence on which a conviction is based; the determination of the jury is ordinarily conclusive on review; the appellate court may not invade the province of the jury; it will not substitute its judgment for the judgment of the jury; and it hesitates to set up its judgment against that of the jury and rarely is justified in so doing."

There can be no question that the Congress of the United States intended to adopt this general rule and did not intend to extend review by this court to questions of fact. Article 67(d) of the Uniform Code of Military Justice, *supra*, expressly limits review by this court. Its wording is as follows:

"In any case reviewed by it, the Court of Military Appeals shall act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the board of review. In a case which The Judge Advocate General orders forwarded to the Court of Military Appeals, such action need be taken only with respect to the issues raised by him. In a case reviewed upon petition of the accused, such action need be taken only with respect to issues specified in the grant of review. The Court of Military Appeals shall take action only with respect to matters of law."

The second well-known rule of law is that if there is any substantial evidence in the record to support a conviction an appellate court, in the absence of other error, will not set aside the verdict. Almost every court of last resort has either adopted this rule or one which is in substantial agreement with it. Different ways of expressing the rule have been used, but few courts, if any, depart from its principle. In stating this rule we have not overlooked the converse principle that where there is no substantial evidence in the record to sustain the conviction the appellate court will set it aside. While this latter rule in a sense permits this court to weigh and evaluate the testimony for the purpose of testing its sufficiency for a limited purpose, it does not permit us to substitute our judgment for that of the triers of fact which, under the present military law, are the courts-martial and the boards of review. Furthermore, this rule neither precludes those tribunals from drawing reasonable inferences from the evidence presented nor does it permit this court to set aside a conviction because we might have inferred differently.

The third principle of law is in substance that the evidence must establish beyond a reasonable doubt that the defendant is guilty of the crime charged. This rule likewise has almost universal application, but it must be borne in mind that the test is applied by jurors or the triers of the facts and not by a review or appellate court. We believe this rule to be aptly stated in the case of Craig v. United States, 81 F2d 816, 827. Judge Garrecht, Circuit Judge, speaking for the Circuit Court of Appeals, 9th Circuit, states as follows:

3

"Here again we believe that the appellants, despite their correct statement of the rule elsewhere in their brief, have overlooked the true function of this court. To sustain a conviction, we need not be convinced *beyond reasonable doubt* that the defendant is guilty: it is sufficient if there is in the record substantial evidence to sustain the verdict.

"In Felder v. United States (C.C.A. 2) 9 F. (2d) 872, 875, certiorari denied, 270 U. S. 648, 46 S Ct 348, 70 L. Ed. 779, the court said:

" 'That we cannot investigate it [the testimony] to pass on the weight of the evidence is a point too often decided to need citation; nor can we, after investigation, use such doubts as may assail us to disturb the verdict of the jury. *That reasonable doubt which often prevents conviction must be the jury's doubt, and not that of any court, either original or appellate.* [Cases cited.] Our duty is but to declare whether the jury had the right to pass on what evidence there was.'

"The correct rule was thus tersely phrased in Humes v. United States, 170 U. S. 210, 212, 213, 18 S. Ct. 602, 603, 43 L. Ed. 1011:

" 'The alleged fact that the verdict was against the weight of evidence we are precluded from considering, if there was any evidence proper to go to the jury in support of the verdict. [Cases cited.]' "

A somewhat similar proposition is presented by the rule which states that the evidence must exclude every reasonable hypothesis of innocence. This, too, is a rule for the guidance of the trial forums. Undoubtedly, the courts-martial and boards of review should take cognizance of this principle, and we must assume they do. Having been instructed that the guilt of the accused must be established beyond a reasonable doubt and that if there is a reasonable doubt the accused is to be acquitted, it would appear to follow that a conviction would not result if there was a reasonable hypothesis of

innocence. Be that as it may, our function is not to seek out hypotheses of innocence, but to determine whether there is sufficient competent evidence to support the findings of guilty.

Having stated the general rules which limit this court to reviewing the facts to determine whether there is sufficient competent evidence to sustain the finding, we test the facts to ascertain whether the court-martial and the board of review could reasonably infer an intent to desert from the evidence presented.

The accused was a member of the armed services and at the time of the claimed desertion he was carried as a member of the 2349th Overseas Replacement Squadron. He was stationed at Camp Stoneman, California, On the 23rd day of October, 1950, approximately four months after hostilities commenced in Korea he left his organization without authority and was unheard of until December 23, 1950. On that date he surrendered himself to the Air Police, Brookley Air Force Base, Alabama. His activities during the sixty-day unauthorized absence are unexplained, so the court-martial, the board of review, and this court are left without knowledge of many helpful elements which might have assisted in determining the true intent with which the accused departed his station and remained absent. This must be inferred from rather sketchy information as the government was content to rely on a paucity of facts and the accused was content not to explain the reasons for his absence.

The recited facts clearly establish that the accused committed one of two offenses, namely, desertion or absence without leave. Desertion is defined in the Manual for Courts-Martial, U. S. A. F., 1949 (applicable to this particular offense) as follows:

"Desertion is absence without leave accompanied by the intention not to return, . . . ."

Absence without leave is stated by that Manual to be failure of a member of the armed services to be at the place

4

where he is required to be at a time when he should be there.

A comparison of these two definitions discloses that the only real difference between the two is the intent with which the absence is attended. The question is thus narrowed to whether or not, from the facts quoted, the court-martial could reasonably infer an intent not to return to the service.

There are many authorities which announce the principle that ordinarily the question of intent is ▇▇▇▇ ▇ one of fact to be determined by the trial forum. The following excerpts are quoted from four United States Circuit Court of Appeals cases:

In Takahashi v. United States, 143 F. 2d 118 (C.A. 9th Cir.), at page 122, the court said:

"This brings us to the next point which is that there is no proof of criminal intent. Here again, unless the court can say affirmatively that no circumstances were proven which might justify a finding of specific intent, the question was one of fact to be resolved by the jury. Questions of knowledge and intent are always questions of fact for the jury. Even though a judge would not have drawn the particular inference, he is not required to set aside a verdict if the jury could find that such an intent existed beyond a reasonable doubt."

In Estep v. United States, 140 F. 2d 40 (C. A. 10th Cir.), at page 45, the Circuit Court of Appeals, 10th Circuit, stated:

"Of course· guilty knowledge or criminal intent is usually a factual question, peculiarly within the province of the jury, and is seldom provable by direct evidence, but must be inferred from the facts and circumstances which reasonably tend to manifest a mental attitude. Gates v. United States, 10 Cir., 122 F. 2d 571, 575; Aiken v. United States, 4 Cir., 108 F. 2d 182; Shell v. State, 184 Ark. 248, 42 S. W. 2d 19."

In Stone v. United States, 113 F. 2d 70 (C.A. 6th Cir.), at page 74, the court said:

"Their real contention is good intent and good faith. Of course, in every agreement like these charged, there must be an intent on the part of the person who attempts or performs it, to do that which is unlawful. A question of intent usually resolves itself into one of fact. We arrive at one's intention by taking hold of certain circumstances, extraneous though they may be, and reasoning out the purposes in doing the act. It is a mental process, but a man's intention is really a question of fact to be arrived at by the trier of the facts in the exercise of reasonable discretion, after considering all the circumstances connected with the act charged. Whatever result reasonably flows from an act is presumed to have been intended by the person who did it."

And in Aiken v. United States, 108 F2d 182 (CA4th Cir), at page 183, the court said:

"Fraudulent intent, as a mental element of crime, (it has been observed) is too often difficult to prove by direct and convincing evidence. In many cases it must be inferred from a series of seemingly isolated acts and instances which have been rather aptly designated as badges of fraud. When these are sufficiently numerous they may in their totality properly justify an inference of fraudulent intent; and this is true even though each act or instance, standing by itself, may seem rather unimportant. Analogies are always dangerous but sometimes rather helpful. So the old analogy of the rope seems in order: any single strand may easily be pulled apart, but many weak strands combined into a single rope may have such tensile strength as to resist the efforts even of a giant to tear it asunder."

In analyzing the evidence for indications of intent we must assume in favor of the finding the existence of every fact fairly developed from the evidence and then determine whether such facts

5

are sufficient to support the finding. If the facts and circumstances reasonably justify an inference of intent to desert by the court-martial, our opinion that the circumstances might be reconciled with an intent to go absent without leave will not warrant our interference with the verdict. Were we authorized to find the facts we might conclude that the accused left his station intending to return. But this is a conclusion we cannot be permitted to reach as a court if the facts permit reasonable men to reach a contrary result.

In testing whether members of the court-martial could reasonably infer an intent to desert the service ▌ some of the facts are restated and some of the inferences which might be drawn are suggested. This country was engaged in hostilities in Korea, and the members of the court-martial would have to credit the accused with abysmal ignorance were they not to conclude that he was aware of that fact. He was stationed at Camp Stoneman, California, which is just a short distance from the San Francisco point of embarkation. He was a member of an overseas replacement squadron, and as the name implies this is a unit for men of the service who are scheduled for overseas duties. We believe it reasonable for the court-martial to infer that the accused was well aware of this fact. He was absent for approximately sixty days and when he turned himself in he was some 2,000 miles further away from hostilities than he was when he absented himself from duty. While he may not have been running away from the possibility of shipment overseas with intent not to return to his station, his acts and conduct were consistent with this intent. With his reasons for absence unexplained a fair-minded person weighing the facts would not be unreasonable in concluding that accused was seeking to avoid overseas shipment and that his intent in leaving was to escape permanently from any such fate.

If the facts and circumstances outlined above compel a court-martial to infer no intent to desert, then the court-martial's finding should be reversed. On the other hand, if they permit some latitude in making a determination of a different intent, namely, intent to desert, then the decision must be upheld.

On page 199 of the Manual for Courts-Martial, U.S.A.F., 1949, the following statement appears:

"If the condition of absence without leave is much prolonged and there is no satisfactory explanation of it the court will be justified in inferring from that alone an intent to remain absent permanently. . . . The inference (of intent to desert) may be drawn from evidence proving that the accused . . . purchased a ticket for a distant point or was arrested or surrendered at a considerable distance from his station; . . ."

The foregoing quotation merely announces common sense inferences any rational person would draw and in drawing them the time and space factors are influential. The longer the absence and the greater the distance from the unit the more reasonable the inference. The shorter the time and distance the less the inference is bottomed on reason. It is almost impossible to fix with certainty the minimum and maximum limits of these factors, but somewhere between the two is an area in which reasonable minds might differ. That area is one in which the members of the court-martial should be permitted to act without interference by this court. Accordingly, if the facts in this case (and we believe they do) place the question of intent in the area where members of the court-martial or board of review could reasonably come to a different conclusion, then it becomes a question solely for their determination.

We do not quarrel with the rule of law that the government must prove beyond a reasonable doubt all essential elements of the crime and that the defendant need not prove his innocence. However, there are reasonable inferences which members of a court-martial may draw from those facts which are established beyond a

reasonable doubt and if the accused is to escape the consequences of those inferences there must be some evidence in the record which makes the inference unreasonable or irrational. To escape an inference arising from possession of recently stolen property an accused might be required to explain his possession; and to escape an inference of intent to abandon the service from much prolonged absence from an overseas replacement squadron he might be required to explain his failure to be present. This rule does not require the accused to testify in his own behalf. It merely affords him the choice of explaining what might be incriminating circumstances or allowing the court-martial to make reasonable inferences from his unexplained and out of the ordinary conduct.

It might be argued that the accused's voluntary return to service makes it unreasonable for the members of the court-martial to infer an intent to desert. His return is a matter which weighs in favor of the accused but does not compel a finding that he did not intend to desert. It is only one strand in a rope of circumstances which the court-martial could take into account in drawing inferences of intent. There is no evidence in the record showing the reason for this return and the members of the court-martial could reasonably weigh this act in its relation to the others. It might evidence one of two mental states: Either that the accused did not intend to desert the service; or, that he, prior to his return, either through the importuning of friends, relatives, or others or by his own mental processes, had concluded to turn himself in, accept the consequences of his desertion and seek leniency from his immediate superiors. By suggesting these alternatives we merely seek to point up the rule that the court-martial had the right to resolve the issues of fact and make reasonable inferences even though one fact and one inference might have been favorable to the accused.

We do not want the views herein expressed to be considered as placing our stamp of approval upon a procedure which barely meets the minimum standards required for a law suit. The trial of a criminal case involves the rights of both the accused and the government and is intended to be a forum where all material facts and circumstances reasonably available should be presented for consideration. Counsel for the government and accused should not be content to barely get by. They should strive to paint a fair factual picture so that substantial justice is afforded to all parties. It seems almost inconceivable that evidence concerning the activities of the accused during his absence could not have been readily obtained and presented. The Staff Judge Advocate in his analysis obtained much information which would have been very helpful to the court. While it was obtained from the accused, had it been investigated and presented to the court by either counsel the finding and sentence might have been different or the guilt of the accused more firmly established.

Conceding that under certain conditions difficulties are encountered by the services in obtaining evidence, this excuse should not be used to justify an inadequate presentation in other cases. The sentences meted out by courts-martial take away fundamental rights of the accused and place them in confinement for long periods of time. Knowing this, counsel should not be satisfied to meet minimum requirements but should prepare their cases well and strive to win fairly by presenting adequately and properly any relevant and material fact which is reasonably available.

We have considered the arguments of the parties on other points, but, holding as we do, they are immaterial.

The question certified is answered in the affirmative. There is substantial evidence to sustain the findings. Accordingly, the judgment of the board of review is affirmed.

BROSMAN, Judge (concurring)

I concur.

I am—fortunately or the reverse—

in the position of agreeing in part, at least, with both of my learned colleagues. On the one hand, and in partial accord with the author of the dissenting opinion, I entertain doubt of the sufficiency of the findings on the basis of the case's facts as selected by him. Yet on the other, if, in addition to these items, the court-martial had lawfully before it for the proper consideration of its members, and for legitimate use as bases of inference, the evidential matters detailed in the prevailing opinion, then I must be counted in the corner of its author. This, so far as I am concerned, is the crux of the matter.

In the dissenting opinion we are told that if the findings of guilty in this cause are sufficient as a matter of law they "must be upheld on the ground either that the absence was much prolonged, without satisfactory explanation, or because of the surrender at a distance of approximately 2000 miles, or a combination of the two." If this is right, I am wrong. For my part I would add to the mentioned "combination of the two"—as does the prevailing opinion in substance and without extended argument—at least the following items: (1) That at the time of the inception of the accused's unauthorized absence he was stationed at Camp Stoneman, California. (2) That at that time he was a member of a military unit denominated the 2349th Overseas Replacement Squadron. (3) That also at this time a state of hostilities characterized by armed conflict existed in Korea and that United States forces were engaged therein. It appears from the dissenting opinion that its author will not question the inclusion of this item. (4) That Camp Stoneman is what is known in military phrasing as a staging area—that is, a station at which preparation for overseas shipment is made. (5) That Camp Stoneman is approximately 45 miles from the San Francisco Port of Embarkation. Having done all of this —and bearing in mind the limitations on the scope of review in this Court— I am unwilling to conclude that the findings of guilty of desertion here made were bottomed on insufficient evidence, and that we should set them aside as being unsupported by some substantial evidence as a matter of law.

Of course I am in complete agreement with the learned author of the dissenting opinion in his suggestion that we are confined in our consideration of the case to the evidence in the record and reasonable inferences therefrom. Since I have gone beyond what he, after careful consideration, appears to regard as the facts before the court, it appears incumbent on me to outline the theory by which I have seen fit to place them before the tribunal. At the outset it is noted that the dissent does not deny the applicability of the doctrine of judicial notice to the case before us. The record of trial nowhere reflects evidence of the distance between Camp Stoneman, California, and Brookley Air Force Base, Alabama, nor is evidence contained therein indicating the existence of armed conflict in Korea—yet the consideration of both of these facts is approved. Perforce they must have entered the scene via judicial notice or at least by operation of a closely related principle, to which the term judicial notice is frequently, if loosely, applied. Wigmore, Evidence, § 2566. Certainly military tribunals have from time immemorial given effect to matter capable of being noticed judicially —that is, assumed without evidence, but not specifically referred to in the record—and the practice is so familiar as to dispense with the necessity for citation of authority. If this constitutes permissible procedure as to the matters referred to above, then I suggest as well that the court-martial could have noticed judicially (1) that Camp Stoneman is a staging area and (2) that it is located within approximately forty-five miles of the San Francisco Port of Embarkation. I cannot see that any sort of problem can be thought to exist as regards item (2) above, for the process involved seems indistinguishable from the approved procedure utilized in determining the distance from Stoneman to Brookley— that is, from Pittsburg, California, to Mobile, Alabama. If the court-martial

8

had not been aware immediately of the mileage involved in either of these instances, reference to an atlas was both possible and permissible. Wigmore, Evidence, § 2568a. A somewhat different situation may be said to exist with regard to the staging area nature of the accused's station. However, if it is proper to invoke at all the principle apparently regarded—possibly without the strictest accuracy—by both the dissenting and prevailing opinions as that of judicial notice, I submit that it may be invoked as much to determine the mission of Camp Stoneman as to ascertain the distance between two geographical points. It is true that I may here be contemplating a somewhat specialized variety of the doctrine, rather than the one more commonly administered by civil courts. However, I am doing so with my eyes open if I am doing so at all. To my mind—and in the military justice scene—it is not necessary that the nature of Stoneman be generally notorious; it is enough if it is notorious in the military service. Moreover, in the present case information concerning this fact might readily have been ascertained from available and authoritative official sources.

In this connection it is worthy of note that a court-martial—and certainly so prior to the adoption of the Uniform Code of Military Justice (Act of 5 May 1950, 64 Stat 108, 50 USC §§ 551–736)—partakes of the nature of both judge and jury, and real difficulties in applying principles developed in courts of the civilian community are to be recognized in a wide variety of military legal situations. In earlier discussions herein of what is at least the legitimate cousin of the doctrine of judicial notice, as recognized in both civilian and military courts, the court-martial has been regarded principally in its judgelike aspect. It is now my purpose to suggest that it and its powers and functions may be viewed from another side—and in this connection the following language from Wigmore on Evidence, 3d ed., section 2570, is of interest as expressing a relevant principle the limits of which are uncertain in civilian as well as in military law administration:

"In general, the jury may in modern times act only upon evidence properly laid before them in the course of the trial. But so far as the matter in question is one upon which men in general have a common fund of experience and knowledge, through data notoriously accepted by all, the analogy of judicial notice by the judge obtains here also, to some extent, and the jury are allowed to resort to this information in making up their minds."

What has been said expressly and impliedly in the foregoing paragraphs leaves out of account only a treatment of the facts that at the time of his improper departure the accused was stationed at Camp Stoneman and assigned to an overseas replacement unit. These things the court-martial could have learned quite properly from an obvious source—for they appear in complete detail in Prosecution's Exhibit #1, Extract Copy of Morning Report, which is regular in form and was admitted without objection. That this document constitutes prima facie evidence—aside from the extract reflected therein—that the accused is assigned as indicated, that the command is located as indicated, and that the report was submitted as indicated, is directly supported by a 1948 decision of the service concerned in the instant case. United States v. Juris, 1 CMR 485, 488-9. See also United States v. Campbell, 1 CMR 362, 364, and United States v. Sustaite, 67 BR 389, 392. There is no disposition on my part to disagree with the following language from the Juris case, supra, and its propriety is certainly demonstrated by reflection on the intellectual processes necessarily involved in any utility of the extract copy as evidence.

"The extract copy of the morning report received in evidence was sufficient only to furnish prima facie proof that a Private Juris (first name and serial number not stated) absented himself without proper leave on 18 July 1942 from the 893rd School Squadron. The authenticating certificate furnishes

prima facie proof that the 893rd School Squadron was located at Lockbourne Army Air Base, Lockbourne, Ohio. The specification alleges that the accused, '. . . then assigned 893rd School Squadron, Lockbourned [sic] Army Air Base, Columbus, Ohio, did at Lockbourne Army Air Base, Columbus, Ohio, on or about 18 July 1942, desert the service . . .': After an opportunity to offer any special pleas or motions was declined by the defense, the accused was arraigned upon the foregoing Charge and Specification, to which he pleaded not guilty. The identity of the accused appearing before the Court with the person named and described in the Specification was established, prima facie, by the arraignment itself. The accused was afforded full opportunity to enter a plea raising the question of such identity, and his failure to do so constituted a waiver of the issue, permitting the Court to proceed upon the prima facie showing of identity in the absence of affirmative evidence to the contrary (ACM 13, Baggett)."

I believe, therefore, that on the issue of intention not to return the court-martial had properly before it in one way or another, at least, the following facts: (1) A sixty-day absence without leave. (2) Termination of this absence at a point approximately 2000 miles from the accused's station. (3) A state of armed conflict in Korea involving United States forces. (4) An accused who was stationed at Camp Stoneman, California. (5) The station of the accused in use as a staging area. (6) The station of the accused approximately 45 miles from the San Francisco Port of Embarkation. (7) An accused who was a member of an overseas replacement unit. On the basis of these items lawfully before the tribunal for its consideration its members found an intention on the part of the accused not to return to the service of the United States. We are now asked to say that this finding is based on no substantial evidence and that it should be set aside as an error of law. I cannot do this.

Two further subjects should be adverted to briefly. Agreement is expressed in the two accompanying opinions in this cause to probable inadequacies in the conduct of one or both of trial and defense counsel. With these strictures I am in hearty accord. This is not to say, however—with particular respect to prosecution deficiencies—that I am willing to set aside as not based on some substantial evidence the findings in this case merely because the trial counsel did not perhaps perform his duties as competently as he might have done. It is noted that trial counsel in the cause was not a member of any bar, although defense counsel had been admitted to practice in one of the United States. By a similar token I am distinctly hesitant to treat the record in this case in an unjudicial manner—pretermitting any question of want of due process— merely because defense counsel conceivably might have protected his client's interests more effectively than he did. It seems to me that the spirit of the system under which we are now working requires that records of trial by courts-martial should—in so far as consistent with considerations of discipline and military exigency—be measured by the yardstick of sound and recognized legal principles and practices as they are administered in civilian criminal courts. As I see it, this mandate cuts in every possible direction.

Reference is made in the opinion of the Chief Judge to the necessity for adoption of a better practice in the administration of the doctrine of judicial notice in military courts. With this I most warmly agree. Indeed the record of trial *should* show that a fact was noticed judicially, if such was the case. Likewise it is to be hoped that in future counsel wishing to profit by an invocation of the principle will affirmatively and specifically request that the fact in question be noticed by the court-martial. Another practice is distinctly inartificial, and tends to lead to difficulties similar to some of those involved in the present case.

In my opinion the question certified should be answered in the affirmative

and the judgment of the board of review affirmed.

QUINN, Chief Judge (dissenting):

I dissent.

I dissent on the ground that the evidence in this case is insufficient as a matter of law to sustain the conviction of desertion. I agree with the broad statements of law set out in the first few paragraphs of the majority opinion. But I definitely disagree with both the recitation of the "facts" and the theories of law which follow.

A careful reading of Judge Latimer's opinion indicates very plainly where the majority and I part company. They apparently believe, in spite of what is said elsewhere, that the accused should prove himself innocent, while I believe the law requires the government to prove its charge, and every essential ingredient of said charge, beyond a reasonable doubt.

In addition to this, the actual result of the majority opinion is to reduce the mandatory presumption of innocence to a mere permissive inference, to be drawn, or disregarded, as a court may desire.

I am deeply concerned with the discussion of the "evidence" which the majority finds in the record to support their approval of the conviction. The only evidence I find is that the accused left his squadron at Camp Stoneman, California, without leave and surrendered sixty days later at Brookley Air Force Base, Alabama. Reference is made to the accused being stationed "just a short distance from the San Francisco point of embarkation"; that the unit of the accused was one "for the men of the service who are scheduled for overseas duties"; and that it was reasonable for the court to infer "the accused was well aware of this fact." These statements may well be true, but I as a judge do not know them to be true in this case. There is no showing in the record of any of these "facts" which are improperly and, I think, unwarrantedly, assumed. Having established these facts", it is then stated that the mere absence of the accused was consistent with "running away from the possibility of shipment overseas"; and that because the accused did not take the stand to explain his absence it was not unreasonable for the court to conclude that the accused "was seeking to avoid overseas shipment". Except that I know as a matter of fact, that the majority opinions and my dissent are based on the same record of trial, I would be forced to conclude that the former had reference to some other record of trial in view of the "'facts" they have now judicially determined to exist. These "facts" are found to exist *nunc pro tunc* as a basis for speculating the accused into prison. I am gravely concerned that the majority has found it necessary to engage in strained speculation and conjecture, and the introduction of "evidence" at this level, as a basis for sustaining the conviction in this case. There may have been substantial evidence available; evidence sufficient to prove guilt of desertion beyond any doubt. But such evidence does not appear in the record. My discussion is limited to the evidence in the record.

The majority opinion makes references to the lack of explanation of absence by the accused. I am unable to subscribe to the obvious implication of such references. The accused is not required to explain anything. It is the government which must prove guilt beyond a reasonable doubt. The accused was clothed in his fundamental presumption of innocence and was entitled to its full protection until the government produced sufficient evidence to overcome it. In my opinion that point was never reached in this case.

I disagree also with the treatment of the circumstantial evidence rule wherein it is stated "a conviction would not result if there was a reasonable hypothesis of innocence." Such a statement necessarily assumes that every conviction regardless of the evidence is good as a matter of law. I know of no authority, and I make bold enough to say here, that there is none, for such a position. The almost universal rule regarding circumstantial evidence, repeatedly affirmed by

the courts, both federal and state, is, that there must be substantial evidence consistent with guilt and inconsistent with any reasonable hypothesis of innocence. This rule has been laid down even more strongly to the effect that the evidence must exclude every reasonable hypothesis but that of guilt; and if the appellate court finds that the evidence in the record does not meet that test, it is the duty of the appellate court to reverse a conviction.[1]

With these references to the majority opinion I now address myself to the issues in this case, and I confine my observations to the record of trial.

The question of jurisdiction of this court was raised by the government, but it is plain that the Judge Advocate General of the Air Force had the right and the authority to certify this case to the United States Court of Military Appeals for review. It is unnecessary to discuss the proposition that the exercise of jurisdiction by this court will result in an *ex post facto* application of the review procedure in Article of War 50 (g) (Act of June 4, 1920, as amended) because Article 67 (b) (2) of the Uniform Code requires this court to review any case certified in accordance with the provisions of Section 67. Under this section the court is required to review "all cases reviewed by a board of review which the Judge Advocate General orders forwarded to the Court of Military Appeals for review; . . . ." Furthermore, the accused joins in the request that this court review the conviction. There is no merit to the government's contention under these circumstances that this court is without jurisdiction to review it, nor can I attach any importance to the assertion that the law is *ex post facto* since the accused makes no complaint about its character and raises no question as to its illegality as an *ex post facto law*. Therefore, the government is certainly in no position to take advantage of any such claim.

At the trial of the accused, in support of the charge of desertion, the prosecution introduced Exhibit I to prove the inception of the absence without leave on October 23, 1950. The parties then stipulated that the accused surrendered to the military authorities on December 22, 1950. The prosecution then rested. The accused elected to remain silent. No other evidence was presented. The board of review, in its decision upholding the legality of the conviction, stated that the trial court could take judicial notice of the fact that the accused surrendered in Alabama more than 2000 miles away from the place from which the accused absented himself without leave, and that the trial court could and probably did take judicial notice of the existence of hostilities in Korea during the period of absence, that these facts together with the length of absence furnished a reasonable basis from which the court could infer an intent to desert the military service.

The trial court undoubtedly had the right to take judicial notice of the fact that Alabama is approximately 2000 miles away from California, and that a state of hostilities existed in Korea. There is no showing in the record that such notice was taken, but there is authority for an appellate court to presume that the trial court did take judicial notice of facts which are common knowledge. I believe that it would be better practice for the trial court to indicate that it had taken judicial notice of facts which might reasonably be disputed, but the mere fact of the failure of the trial court to so indicate in the record in and of itself does not deprive the appellate court of assuming that judicial notice was taken of the facts referred to by the board of review. The question, therefore, is presented whether or not the unauthorized absence of sixty days resulting in surrender at a distance approximately 2000 miles away at a time when hostilities did exist in Korea without any other affirmative proof of an intent permanently to desert the military

---

[1] Scott v. United States, 145, F. 2d 405, 408, (C. A. 10th Cir.); United States v. Sower, 17 BR 167, 170. State v. Blood, 68 R.I. 160, 26 A. 2d 745; State v. DiNoi, 59 R.I. 348, 195 A. 497.

service is sufficient evidence upon which a conviction for desertion can be predicated.

If the finding of guilty of desertion in this case is sufficient as a matter of law, it must be upheld on the ground either that the absence was much prolonged, without satisfactory explanation, or because of the surrender at a distance of approximately 2000 miles, or a combination of the two. In regard to the proposition of surrender, it is noted that the various Manuals for Courts-Martial[2] use the phrase "arrested or surrendered at a considerable distance from his station" as permitting the inference of intent to desert, while Winthrop refers only to "being apprehended at a long distance from his station".[3] I am inclined to agree with the view taken by Winthrop. Surrender alone, without some showing affecting its voluntariness, must be considered as favorable to the accused. I appreciate that circumstances in some other case may be such that there can be a voluntary surrender by an actual deserter. But each case must be decided upon its own facts.

It is noted that the present tendency is to construe distance in the light of modern transportation facilities.[4] I subscribe to this policy and hold that distance alone, in a case of voluntary surrender, is not to be considered a determining factor.

In his brief, counsel for the accused maintains that this conviction should not stand because of inconsistency on the part of the court amounting to a deprivation of rights of the accused. It is stated that in a trial held one week before the instant trial the same court, except for a difference of two members, in the case of Myers, ACM 3921, 4 CMR(AF) 673, had found the accused, also charged with desertion, guilty of the lesser included offense of absence without leave. The evidence in both cases was identical, i.e., that both accused left their stations at the same time and surrendered together at the same place; that the prosecution proved both cases by similar exhibits, and stipulations, with the accused in each case electing not to testify. The record of trial in the Myers' case was forwarded to this court as an exhibit, and it bears out these contentions. Unquestionably the findings in the two cases are inconsistent. They may well be irreconcilable to reasonable men; but it is not within our province to disturb the finding in this case on that basis. The law does not require consistency in findings.[5] Inconsistency of itself is not ground for reversal.[6]

Now we come to the question of whether sixty days unauthorized, unexplained absence, terminated by surrender 2000 miles away with a state of hostilities existing in Korea, is sufficient as a matter of law to warrant the trial court in reaching the conclusion that the accused intended to permanently desert the military service. It has been the long-standing rule of all the services that a much prolonged unauthorized absence alone will, without satisfactory explanation, justify a trial court in drawing the inference of intent to remain away permanently.[7] While the services agree on this rule, they are in conflict in their interpretations as to what constitutes a "much prolonged" or "protracted" absence.[8] From the cases cited in footnote 8 it will be noted that

---

[2] MCM, U. S. Army 1928, p. 144; MCM, U.S.A.F. 1949, p. 199; MCM, U. S. 1951, p. 314.

[3] Winthrop, Military Law and Precedents (2d ed., 1920 reprint), 639; Winthrop, Abridgement of Military Law (1887) 252.

[4] United States v. Swenson, 3 BR 43 (1931); United States v. Sower, 17 BR 167 (1943).

[5] Dunn v. United States, 284 U.S. 390, 393.

[6] Young v. United States, 168 F. 2d 242, 246. (C.A.—Cir.)

[7] MCM, U. S. Army, 1928, p. 143; MCM, U.S.A.F., 1949, p. 199; MCM U. S. 1951 p. 313; Nav. Dig. (1916) p. 172; CG Law Bull. 141 p. 6; Winthrop, Military Law and Precedents, 638.

[8] a. Length of absence insufficient: United States v. Green, 2 CMR 523 (28 days, Sur.); CMO 4, 1927, 14 (5 days del.); CM 123404, Standlea (36 days,

one line of authority has held that thirty-six days absence alone is not "much prolonged", while another had held that seven days absence without further showing, will sustain a conviction of desertion. Winthrop[9] sheds little light on what constitutes a "protracted" absence.

I am satisfied that in cases of this type no specific line of demarcation can be drawn upon which the offense of desertion can be predicated. To attempt to draw such a line would be unwarranted interference with the trier of facts. I am aware of, and in accord with, the proposition that absences of different lengths may vary in their significance according to times, conditions, and circumstances under which they take place.[10] Here I pass only on the legal sufficiency of the evidence in this case.

The desertion charged in this case, the unauthorized absence with intent permanently not to return, is one of the most serious offenses known to military law. In war times a person convicted of desertion loses his nationality,[11] and is subject to the death penalty; at all times this offense is punishable by substantial periods of confinement,[12] dishonorable discharge, and other disabilities.[13] A finding of guilty of this offense should never result from mere conjecture, as distinguished from a compelling inference fully justified by the facts.

It is noted that the Table of Maximum Punishments[14] for the present offense provides for punishment for "Desertion: Terminated by Surrender —After absence of not more than 60 days." We have already recognized that there can be a surrender by an actual deserter. Contrition or repentance by one who has committed a crime is not unusual. It is reasonable to assume that any desertion punishable under the cited provision would be susceptible of some affirmative proof as distinguished from inference or conjecture. It is also noted that this same table provides for punishment for "Absence Without Leave: For more than 60 days." This provision is listed under the former Article of War 61 which covers "Absence Without Leave" only. There is no indication, then, that this punishment contemplates only those cases where the charge desertion involves absences of approximately 60 days, with no other evidence, and a court has found the accused guilty of the lesser offense of absence without leave. Rather the indication appears to the contrary. I do not consider this conclusive, but it is certainly persuasive that the framers of the Manual[15] did not consider sixty days "much prolonged" under the provisions of paragraph 146a of the Manual. Also, it is interesting to note that the present manual has retained the same provision for punishment for "Absence Without Leave: For more than 60 days" but has deleted the former listing of "Desertion: Terminated by surrender— After absence of not more than 60 days."[16]

In discussing length of absence the various authorities have held in substance: that the mere fact of unauthorized absence for a certain period is neither conclusive nor *prima facie* evidence of the intent to desert, but the proof of a prolonged unauthorized absence will permit the court to infer such intent from the fact of the long

---

Arr.); United States v. Swenson, 3 BR 43 (23 days, Sur.); CG Law Bull. 170 p. 6 (45 days, app. plus other ev.); United States v. Kennedy, 17 BR 305 (32 days, Sur.).

b. Absence sufficient: United States v. Trejo, 2 CMR 591 (140 days, App.); CMO 1, 1943, 64 (7 days, Sur.); CMO 2, 1950, 36 (8 days, Sur.); United States v. Gerber, 10 BR 107 (91 days, Sur.); CG Law Bull. 141, p. 6 (3 mos., App.); CG Law Bull, 155, p. 12 (56 days, Sur.)

[9] Winthrop, Military Law and Precedents, *supra.*
[10] Winthrop, Military Law and Precedents, 638.
[11] 8 USCA § 801.
[12] MCM, U.S.A.F. 1949, p. 134; MCM US, 1951, p. 220.
[13] 10 USCA § 906; 34 USCA § 1431, et seq.; 38 USCA § 693g.
[14] MCM, U.S.A.F. 1949, p. 134.
[15] MCM, U.S.A.F. 1949.
[16] MCM, U.S., 1951, p. 220.

absence,[17] i.e., the circumstances of the case. The necessary intent coupled with unauthorized absence constitutes the *corpus delicti* of the offense of desertion.[18] *These items the prosecution was required to prove beyond a reasonable doubt.* The unauthorized absence of the accused affirmatively appears as a matter of record. There is no direct proof of any intent to desert. Such intent, if present in this case, must be inferred from the sixty days unauthorized absence terminated by surrender approximately 2000 miles away. Apparently the trial court found that such intent was present at some time during the absence of the accused. This finding of intent to permanently abandon the military service must be tested by the fundamental rules governing the use of such evidence.[19]

Assuming, but not conceding, that the sixty days absence without leave falls within the term "much prolonged" as used by the services,[20] the evidence still must be legally sufficient to meet the requirements of the criminal law. Viewing the evidence in the light most favorable to the prosecution we must find that it was consistent with the finding of guilty and inconsistent with any reasonable hypothesis of innocence.[21] The rule has also been laid down that there must be substantial evidence which excludes every other reasonable hypothesis but that of guilt.[22] Regardless of which rule we adopt, the evidence of desertion in this case is not sufficient to comply with either. Admittedly the accused may have intended to desert at some time during his absence; he may have reached such a conclusion on more than one occasion; he may have actually been a deserter and suffered a change of heart. These things we do not know. We can only speculate upon them. But such speculation is insufficient to support a conviction. I cannot hold that the sixty days' unauthorized absence terminated by voluntary surrender 2000 miles away is, as a matter of law, inconsistent with the hypothesis that the accused was guilty only of absence without leave.

The court appears to reach the conclusion that because the triers of fact have reached a verdict of guilty, that this, in itself, proved that there was competent evidence before them upon which reasonable minds might differ and which would therefore justify their reaching the verdict.

But the mere fact that a jury has reached a verdict in either a criminal or a civil case, by no means proves that it had competent legal evidence before it. There are innumerable cases, in both state and federal courts, where juries have reached verdicts upon what they believed was competent and sufficient evidence, where the verdict has been set aside by an appellate court because the record disclosed that there was no competent legal evidence upon which the jury could predicate its verdict.

The majority seems to lose sight of the fact that the judge has a duty to perform as well as the jury (Wigmore, Evidence (Third Edition), § 2487, par. 2).

"The treatment of the situation and the operation of the rules, can best be comprehended by keeping this consideration in mind, namely, that the *opportunity to decide finally upon the evidential material that may be offered does not fall to the jury as a matter of course;* that each party must first with his evidence pass the gauntlet of the judge; and that the judge, as a part of his function in administering the law, is to keep the jury within the bounds of reasonable action. In short, in order to get to the jury on the issue, and bring into play the other burden of proof (in the sense of the risk of non-persuasion of the jury), both parties alike

---

[17] Winthrop, Military Law and Precedents, *supra*, 638; Dig. Op. JAG 1921–40, p. 267; MCM, USCG, p. 118.

[18] MCM, U.S.A.F. 1949, p. 198.

[19] Wharton, Criminal Evidence (11th ed.), p. 1496, 1605, et seq.

[20] Note 7, *supra*.

[21] Scott v. United States, 145 F. 2d 405, 408, (C.A. 10th Cir.); United States v. Sower, *supra*, 170; State v. Blood, 68 R. I. 160, 26 A. 2d 745; State v. DiNoi, 59 R. I. 348, 195 A. 497.

[22] Van Gorder v. United States, 21 F. 2d 939, 942, (C.A. 8th Cir.).

*must first satisfy the judge that they have a quantity of evidence fit to be considered* by the jury, and to form a reasonable basis for the verdict. This duty of satisfying the judge is peculiar in its operation, because if it is not fulfilled, the party in default loses, by order of the judge, and the jury is not given an opportunity to debate and form conclusions as if the issue were open to them."

It is my contention that in this case there is no legal competent evidence to indicate that the accused *intended permanently to abandon the military service.*

It is said by the majority that the government should not be content to rely on "a paucity of facts." With that, I wholeheartedly agree. The reference to the inference which may arise from the possession of recently stolen property is an unhappy one, because the great weight of authority repudiates any rule of presumption in this type of case (Wigmore, Evidence (Third Edition), § 2513).

With the language that follows that reference I am in complete disagreement. It is inconsistent to say that the accused does not have to testify in his own behalf, and in the next breath pontificate, that if he doesn't he must take the consequences. That is not the law. The accused had a perfect right not to explain the reason for his absence, and for such failure, no inference could be drawn against him. Let me also note the specific language of Judge Latimer:

"It seems almost inconceivable that evidence concerning the activities of the accused during his absence could not have been readily obtained and presented."

*That is exactly the point in this case.* Evidence could have been produced about what the accused did in Alabama; what he wore; what he said; whether he tried to get a job, etc.; evidence which if produced, would have been competent legal evidence to prove his intention to permanently abandon the

military service if such an intention ever existed. But this evidence the government did not produce. The prosecution failed to prove its case, and the last paragraphs of the opinion indicate this in plain, unmistakable language.

I reiterate, the question at issue in this case is whether or not the government has proved the charge of desertion. The accused is under no obligation to prove that he is not guilty of the charge of desertion. Every accused is presumed to be innocent of the charge preferred against him until he is proven guilty beyond a reasonable doubt. This is his constitutional right. The burden is upon the prosecution to prove its accusation, and every essential ingredient of its charge, beyond a reasonable doubt. Desertion is the act of a member of the armed forces leaving his station of duty without authority with the intention of not returning.[23]

The charge of desertion necessarily implies an intention to permanently abandon the military service. Therefore, to sustain its charge in this case the government must prove beyond a reasonable doubt that the accused left his station without authority, intending permanently to remain away therefrom.

The proof presented by the Government amounts to this, and this only, that the accused, at a time when hostilities in which the United States was engaged existed in Korea, left his station in California without authority and went to Alabama, approximately 2000 miles away, and there surrendered sixty days later. There is no affirmative evidence of desertion.

Is the fact then that the accused was 2000 miles away from his station, sixty days after he left it without authorization, in and of itself, sufficient proof of the crime of desertion?

I am of the opinion that neither fact in and of itself proves beyond a reasonable doubt that the accused intended to remain permanently away from the military service, and that when taken together, both facts, without any

---

[23] 6 C.J.S. 426, § 40(a); Hanson v. South Scituate, 115 Mass. 336; Winthrop, Military Law and Precedents (2d ed.) 637.

other evidence, do not constitute proof beyond a reasonable doubt that the accused intended permanently to remain away from the military service. There may have been facts which if properly developed would have shed more light upon the true picture in this case, but we cannot go beyond the record.

The accused is guilty of the offense of absence without leave, but the government has not proved beyond a reasonable doubt that he is guilty of the charge of desertion. The conviction of desertion should be set aside, and the case remanded to the Judge Advocate General of the Air Force for appropriate action.