UNITED STATES, Appellee

v.

CHARLES S. UCHIHARA, Corporal, U. S. Army, Appellant

1 USCMA 123, 2 CMR 29

No. 60

Decided February 4, 1952

MAJ. Sumner A. Brown, USA, for Appellant.
MAJ. Augustus A. Marchetti, USA, for Appellee.

Opinion of the Court

BROSMAN, Judge:

Uchihara, the petitioner, was convicted following trial by general court-martial at Yokohama, Japan, of the offense of desertion with intent to avoid hazardous duty, to wit, service in Korea, in violation of Article of War 58, 10 USCA § 1530. Trial was held on

June 5, 1951, and the accused was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for seven years. The convening authority approved the findings but reduced the sentence of confinement to three years. A board of review in the Office of The Judge Advocate General, United States Army, affirmed on July 27, 1951. We granted the accused's petition filed under the terms of the Uniform Code of Military Justice, Article 67(b)(3), 50 USCA § 654.

In December 1950 the accused was evacuated from Korea to Japan on suspicion of organic physical disability. Following hospital examination in Tokyo, he was reported physically fit for general service and initial steps were taken to return him to Korea through Camp Drake. He was assigned to Detachment 1, Japan Replacement Training Center, 8042d Army Unit (Pipeline), and reported to Camp Drake on January 11, 1951. Two days later he absented himself without leave and remained in a status of unauthorized absence until April 6, 1951, when, on the advice of friends, he surrendered to the military authorities. Following arraignment the accused pleaded not guilty to the crime charged, but guilty of the lesser included offense of absence without leave for the period alleged in the specification. The evidence for the government consisted of two principal elements: (1) A duly authenticated extract copy of the morning report of the accused's detachment reflecting the absence charged, which was admitted without objection. (2) A full statement in the longhand of the accused admitting sufficient facts to establish guilt of desertion to avoid the hazardous duty alleged, also received by the court-martial without objection by the defense.

The single issue presented in this case is whether there appears in the record sufficient evidence to corroborate petitioner's confession, which effectively admits his guilt of the crime charged, and as to which there is no suggestion of want of volition. The Manual for Courts-Martial, United States, 1951, paragraph 140a, sets out the rule on this point applicable to military tribunals and reads as follows:

"An accused cannot legally be convicted upon his uncorroborated confession or admission. A Court may not consider the confession or admission of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged had probably been committed by *someone*. Other confessions or admissions of the accused are not such corroborative evidence. Usually the corroborative evidence is introduced before evidence of the confession *or admission;* but *the* court may in its discretion admit the confession *or admission* in evidence upon the condition that it will be stricken and disregarded in the event that the above requirement *as to corroboration* is not eventually met. The *corroborating evidence* need not be sufficient of itself to convince beyond a reasonable doubt that the offense charged has been committed, and it need not tend to connect the accused with the offense." (Italics supplied)

For the purpose of later comparison herein in connection with the consideration of arguments addressed to this Court in briefs of counsel and at the hearing, the language of the Manual for Courts-Martial, 1949, paragraph 127b, dealing with this subject, superseded by that quoted immediately above, is set out:

"An accused cannot be legally convicted upon his uncorroborated confession. A court may not consider the confession of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged has probably been committed; *in other words, there must be substantial evidence of the corpus delicti other than the confession.* Other confessions or admissions of the accused are not such corroborative evidence. Usually the corroborative evidence is introduced before evidence of the confession; but a court may in its discretion admit

the confession in evidence upon the condition that it will be stricken and disregarded in the event that the above requirement *as to evidence of the corpus delicti* is not eventually met. *This evidence of the corpus delicti* need not be sufficient of itself to convince beyond reasonable doubt that the offense ·charged has been, committed, *or to cover every element of the charge,* or to connect the accused with the offense." (Italics supplied)

Differences of possible significance between the two provisions are suggested by the use of italics in the quoted phrasing. It will be noted in passing that an effort has been made to eliminate use of the phrase "corpus delicti" from the language of the superseding directive, substituting therefor the words "corroborating evidence" or words to this effect. It is also to be observed that admissions are included within the rule expressed in the 1951 Manual, whereas they were unmentioned in the preceding one. It will next be seen that the language following the semicolon in the second sentence of the passage quoted from the 1949 Manual has been omitted from its successor, with the effect that no longer is the adjective "substantial" applied to the evidence demanded in corroboration. In addition, the phrase "or to cover every element of the charge" was deleted from the ultimate sentence of the quoted 1949 passage as it was carried over to the Manual now in force. Finally the idea expressed in the terminal clause of the ·last sentence quoted above from both Manuals has been pointed up by the addition of the words "by someone" at the end of the second sentence of the 1951 version.

The rule demanding corroborative evidence or requiring proof of the corpus delicti as foundational to the reception of an extrajudicial confession seems never to have become rooted in England, and has been the subject of responsible and scholarly criticism in this country. Wigmore, Evidence, 3d ed, § 2070. It has also been received dubiously and, followed unwillingly by some American courts. See Daeche v. United States, 250 F 566 (CA2d Cir). It is certainly arguable that both the criminal tribunal and the confessing accused person are afforded adequate protection through a careful and critical administration of the rule demanding volition as a condition to the admission of a confession, which principle has been based on varying theories, clothed in varying verbiage and carried to varying lengths by Anglo-American courts. However, the doctrine requiring corroboration is well established with us, and is certainly an essential and settled part of military law. Manual for Courts-Martial, United States, 1951, paragraph 140a, supra. The question confronting us has to do with the nature and quantum of corroboration commanded.

Approaching the facts of the case at bar the problem is narrowed to a single, two-pronged inquiry: does proof of absence without leave alone constitute the corpus delicti for desertion with intent to avoid hazardous duty, or does the exaction of corroboration demand in addition at least some evidence, direct or circumstantial, that the intent alleged was probably entertained? On the one hand, it is effectively argued by government counsel that the corroborative evidence contemplated — the proof of corpus delicti—signifies merely the fact of the specific loss or injury sustained. This, we are told as regards this offense, is represented by the unauthorized absence, which constitutes the deprivation suffered by the government through the service concerned. Once this loss has been shown, the corpus delicti is established, and the intent by which the absence is characterized may be established through the confession of the accused. It is further suggested that the principal objective of the requirement of corroboration is the assurance that an accused person will not be punished for an uncommitted offense. Hence slight and partial evidence will suffice for this purpose—and the analogy of homicide is discriminatively offered. Proof of the corpus of this crime requires, it is said, evidence only of the deceased's body together with a showing of cir-

**125**

cumstances suggesting an unlawful death. Thereafter the nature of the accused's intent, as well as his complicity in the offense, may be established fully by means of his confession. These views are supported, appellate government counsel argues, by the careful deletion of the phrase "corpus delicti" from the 1951 Manual's treatment of this subject, and the omission of the requirement of "substantial" evidence in the second sentence thereof.

On the other hand, appellate defense counsel points out the elemental duality of this offense, and argues that the Manual's provisions require some precedential evidence not only of the unauthorized absence, but also of the intent by which it was accompanied. Here, therefore, the reception of the petitioner's confession should have been conditioned on the offer of corroborative evidence of his intent to avoid hazardous duty. The record does not reflect the presence of this corroboration, and—the argument continues— the court erred in accepting the accused's admission of the requisite intent. Counsel finds support for this conclusion in the language of both the 1949 and 1951 Manuals demanding a foundation in evidence that "the offense charged had probably been committed." Further support for this position is also found in the omission from the current Manual's discussion of corroborative evidence in this setting of the phrase "or to cover every element of the charge." Counsel argues that "the offense charged" in this case is desertion; that it consists of two essential ingredients, the absence and the intent; and that the Manual plainly requires corroborative evidence as to both. However manifest this requirement may have been in the phrasing of the preceding Manual, he asserts, it is made crystal clear, indeed, in the 1951 edition, which purposefully deleted the prior language expressly excusing the government from the burden of corroborating "every element of the charge." The effect of this deletion, he concludes, together with the requirement of evidence of "the offense charged"— that is, of desertion—is to necessitate some evidence, apart from the confes-

sion, showing the existence of every element. In the instant case this would require proof (a) that there was an absence without leave, and (b) that there was an intent to avoid hazardous duty.

Accepting the basic position of appellate defense counsel for the moment —that is, that the proper admission of the confession in this case must have been founded on evidence, apart from its own terms, of every element of the charge of desertion as alleged—let us consider the facts surrounding the admitted and additionally established absence without leave. At the time of his illegal departure the accused was stationed at Camp Drake, Honshu, Japan, a post from which military personnel are pipelined to Korean combat. At that time, too, he was a member of a unit known as Detachment 1, Japan Replacement Training Center, 8042d Army Unit (Pipeline). This unit was a pipeline unit—an agency for the transmission of troops to Korea. In addition, this unit served only to pipeline personnel to Korea; the returning pipeline function was delegated to other agencies. Knowledge of these facts was available to the law officer at the time he admitted the confession in evidence, and we cannot suppose he disregarded it. Accepting the analysis of defense counsel, we are now asked by him to say that the law officer was unjustified in finding in the facts mentioned the direct or circumstantial "other evidence" required by the 1951 Manual—not, be it noted, the "substantial evidence" demanded by its 1949 predecessor—that the accused probably intended to avoid hazardous duty at the time he absented himself without leave. It is perfectly plain to us that we should not do this. In our opinion—and we so hold—there was at least minimal "other evidence" of the sort demanded by the current Manual, and no error was committed in receiving the voluntary statement of the accused. With this complete confession before the court-martial there can be no question whatever concerning the propriety of its findings of guilty.

Perhaps some brief mention should be made of the means by which the

126

facts recounted in the preceding paragraph came before the law officer and the court-martial. The facts that the accused was stationed at ▮▮▮▮ ▮ Camp Drake and assigned to a pipeline unit were reflected in detail in Prosecution's Exhibit No. 1, Extract Copy of Morning Report, which is regular in form. This document constitutes prima facie evidence—aside from the extract reflected therein—that the accused was assigned as indicated, that the command was located as indicated, and that the report was submitted as indicated. United States v. McCrary, (No. 4), 1 USCMA 1, 1 CMR 1. Information concerning the character of Camp Drake and of the 8042d Army Unit (Pipeline) reached the law officer and the court-martial via the doctrine of judicial notice, or at least by operation of a closely related principle, to which the term judicial notice is usually, if loosely, applied. Wigmore, Evidence, 3d ed, § 2566; United States v. McCrary, supra. In the concurring opinion in the McCrary case the following language was used:

"Certainly military tribunals have from time immemorial given effect to matter capable of being noticed judicially—that is, assumed without evidence, but not specifically referred to in the record—and the practice is so familiar as to dispense with the necessity for citation of authority. . . . To my mind—and in the military justice scene—it is not necessary that the [staging area] nature of [Camp] Stoneman be generally notorious; it is enough if it is notorious in the military service. Moreover, in the present case information concerning this fact might readily have been ascertained from available and authoritative official sources."

In United States v. McCrary, supra, a majority of this Court—despite the respectable military practice mentioned in the preceding quotation—referred to the necessity for adoption of a better practice in the administration of the doctrine of judicial notice in military courts. Indeed, the record of trial should show that a fact was noticed judicially, if such was the case. The following language on this subject also appears in the concurring opinion in the McCrary case:

"Likewise it is to be hoped that in future counsel wishing to profit by an invocation of the principle will affirmatively and specifically request that the fact in question be noticed by the court-martial. Another practice is distinctly inartificial, and tends to lead to difficulties similar to some of those involved in the present case."

These remarks were intended as a guidepost to probable future action on the part of this Court. However, because of the recentness of the McCrary case's appearance, there is at this time no disposition to act adversely with respect to the loose, if ancient, practice of military courts—and that of many civilian tribunals as well—in this particular.

It has been suggested to us that, since even replacement pools, pipeline units, and the like maintain a small body of permanent party personnel, no inference of a Korean destination may attach to the accused's assignment to the 8042d Army Unit (Pipeline). We do not agree with this proposal for two reasons. In the first place, conclusive evidence of a hazardous duty terminus is not required for the present purpose. Some evidence of probability only is demanded here. It is, therefore, enough if evidence is produced raising a permissible inference. In the second place, had the accused been a member of his organization's permanent party, it would have been an extremely simple matter for him to have shown this fact. It is deceptive to say that this view either requires the accused to take the stand or to introduce any evidence whatever. Nothing whatever is required. The accused need not testify to the fact under any circumstances, for, if true, it may be shown in a wide variety of other ways. Moreover, a recognized distinction exists between requiring a party to a judicial proceeding to introduce evidence on the one hand, and permitting an inference against him in a certain posture of the

**127**

case if he chooses to refrain, on the other. This widely accepted, respectably permissible and quite logical phenomenon is to be observed in the operation of judicial tribunals—military and civilian—daily and everywhere. It is obvious, of course, that in a criminal setting we are speaking in this connection of evidence other than the testimony of the accused.

As a matter of interpretation, there is much to be said for the view of appellate defense counsel as to the current Manual's provisions on this subject, and much against the position of the government that the corpus delicti of desertion is necessarily made out by a showing of the unauthorized absence alleged. However, because of our conclusion that corroboration as to all elements of the offense charged is in fact present in the case at bar, it is not necessary that we pass definitively on the broader question—and we explicitly refrain from doing so. Under the exposition of Manual language urged upon us by either counsel, we believe the Uchihara court-martial did not err in receiving the petitioner's confession. Accordingly, the decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur with the opinion of Judge Brosman, but because of the character of the dissent I desire to express briefly my views.

In the first place, this Court was exceedingly considerate of the rights of the accused when we permitted a review to consider the question of the admissibility of the confession. The record shows that his counsel, who is a member of The Judge Advocate General's Corps and is certified as qualified to try cases before general courts-martial, did not object to the introduction of the statement in evidence. On the contrary, he was quite willing that it be admitted in evidence and sought to use its contents to strengthen his defense. In this connection, I quote from the argument made by defense counsel:

"The defense admits that the accused told certain persons that he was not going back to Korea; that he didn't want to. He also admitted the AWOL charge. He pleaded guilty to that. But the confessions which has (sic) been introduced by the prosecution are not objected to by the defense; not only does he (it) admit that the accused said he would not go back to Korea, but shows the reasons as to why he had that intent not to go back."

Accordingly, we have a situation where we review an assignment of error touching on the admissibility of a document after the accused did not object to its introduction. He invited its admission and attempted to fortify his defense by relying on the included reasons for his absence, and yet it is suggested we seek by going outside the record to sustain his conviction.

In the second place, as suggested by Judge Brosman, we need not at this time pass on the legal question as to whether absence without leave is sufficient to establish the corpus delicti for desertion, as there are ample facts in the record to show the probability that accused intended to shirk hazardous duty. We are not relying solely on a morning report entry, as stated by the dissenter, as the accused pleaded guilty to being absent from a Pipeline Company from the 13th day of January, 1951, to the 6th day of April, 1951. This established beyond any doubt all of the elements of the offense except the intent with which the accused went or remained absent. For the purposes of showing this, and only to the extent necessary to corroborate the confession, the following facts are related: The accused had been in Korea and was returned to Japan for medical reasons, and there is a standard Army procedure for evacuation and return of hospitalized personnel. His plea of guilty would establish that he was released from medical channels to duty. He consulted a captain of his former unit, seeking his aid in being transferred to a unit stationed in Japan. He was informed that this would not be possible unless he could obtain a medical certificate showing he was fit only for limited service. He sought the assistance of a sergeant in an effort to remain in Japan. He told part of his

marital troubles to this sergeant and was advised to get certain papers prepared before he was shipped back to Korea. Sometime thereafter, he absented himself without authority for approximately three months. These facts alone would be sufficient to establish probable intent not to go back to Korea; but in addition, as mentioned by Judge Brosman, accused was a member of a "pipeline" company, which has the particular purpose of carrying out the details of transporting casuals forward to combat areas.

Great emphasis is laid by the dissenting judge on the fact that the majority opinion states that the court-martial could take judicial notice of the purpose of a pipeline company. I wonder if the same protest would be lodged against judicially noting the purpose of a medical company, a quartermaster company, a field artillery battery, or other well-known military organizations. Unfamiliarity by an appellate judge with the type and purpose of a military unit does not preclude a court-martial from judicially knowing its purpose. Moreover, the accused by his own witnesses established that he was not a member of any detachment which would permit him to remain in Japan.

In the final analysis, the question of proof necessary to corroborate a confession is not the same as that necessary to convict, and in this case the accused pleaded guilty to an included offense; he furnished facts and circumstances, independent of the confession, which taken together with the prosecution evidence are sufficient to establish clearly the probability that he intended to avoid hazardous duty. When these facts and circumstances are coupled with the confession made by the accused the evidence overwhelmingly preponderates in favor of the finding of guilty. Even though vehemently stated, the fears expressed in the dissent are more imaginary than real.

QUINN, Chief Judge, (dissenting):
I concur with the majority opinion insofar as it timidly intimates that the Manual requires as corroboration of a pre-trial confession substantial evidence that the crime charged has been committed by someone. Further, that this proof must encompass every element of the crime excepting, of course, the criminal agency of the accused. This statement of the rule is fully in accord with the Manual and the better reasoned federal decisions. Forte v. United States, 94 F2d 236 (CA DC Cir); George v. United States, 125 F 2d 559, 563 (CA DC Cir); Ercoli v. United States, 131 F2d 354, 356 (CA DC Cir). It is clear to me that these decisions and the Manual statement of the rule are irreconcilable with the government claim that the corpus delicti of desertion is made out solely by a showing of the unauthorized absence alleged. Proof of absence without leave is just as consistent with desertion with intent to remain absent permanently and desertion with intent to avoid important service as it is with desertion with intent to avoid hazardous duty. These are separate crimes. I take it that the reason for the rule requiring corroboration is to prevent conviction for a crime which never actually occurred. I quite fail to see how it is possible to satisfy this reason for the rule unless the proof outside the confession shows substantially that the specific offense charged has been committed. The government's statement of the rule obviously does not satisfy this basic test.

The Manual requires for the crime of desertion with intent to avoid hazardous duty proof that the accused was absent without leave as alleged and that he intended to avoid the hazardous duty alleged. MCM 1949, paragraph 146a. This latter element at least requires evidence that the accused knew with reasonable certainty that he would be required for such hazardous duty. MCM 1949, paragraph 146a. The total relevant evidence here consists of petitioner's confession together with morning report extracts showing the period of absence. The majority finds sufficient evidence of the necessary intent in the morning report exhibit heading showing that petitioner was attached at the time of departure to the Japan replacement training center,

**129**

8042d Army Unit (pipeline) at Camp Drake, Honshu, Japan. By the use of presumptions and a highly questionable application of the doctrine of judicial notice the majority infers from this that petitioner knew of his imminent departure for Korean combat duty.

I have already made it clear that I, contrary to my colleagues, will not stretch the record to plug loop-holes in deficient prosecution cases by the expedient of judicial notice. I know not where the majority obtained the information that petitioner's unit served only to process personnel for combat duty in Korea. It is not in the record, nor is it adverted to in the briefs of counsel. My dissent in United States v. McCrary, (No. 4), 1 USCMA 1, 1 CMR 1, makes it clear that I am unalterably opposed to adding proof to the record on the basis of information obtained from outside sources by judges at the appellate level. I note that the majority, while approving the proper procedure for utilizing judicial notice, refuses to enforce it.

But the majority is not content to stop here. The opinion follows a circuitous path, presuming from presumptions, to get from the morning report heading to a finding that the record shows sufficient proof of the intent to avoid hazardous duty. To reach this result, the majority presumes: (1) that the army unit does exist for the purpose now ascribed; (2) that the court knew of the consequences attendant upon attachment to this unit; (3) that the court took judicial notice of this; and (4) that they considered this to be satisfaction of the rule requiring corroboration. Besides my re-luctance to give ex post facto effect to the doctrine of judicial notice, I do not believe it to be sound appellate judicial practice to pyramid presumptions of fact in this manner.

If petitioner was, in fact, scheduled for duty in Korea, the prosecution could have easily produced affirmative evidence to that effect. I would be derelict in carrying out the responsibility which I believe Congress has entrusted to me if I did not note with grave misgivings a tendency on the part of the government to rely on a bare minimum of evidence in proving its cases. This, to me, is especially reprehensible in cases such as this, where there is no limitation on the punishment which the court may impose.

If a rule is worth having, it is worth enforcing. In my opinion the majority is giving lip-service only to the rule requiring corroboration. It is not for us to avoid this rule either directly or by subterfuge. It has been strictly enforced by the federal courts, and it is accepted in the majority of American jurisdictions. If that is not enough, the President, through the Manual for Courts-Martial, has made it binding upon us. The majority makes it ineffective in desertion cases by seizing upon facts, if they are facts, outside the record to supply what the government did not prove. I regret my inability to persuade my colleagues of the serious consequences of such a course. My fears, expressed in my dissent in United States v. McCrary, supra, have already been substantiated. I would reverse this conviction for failure to establish, outside the confession, the corpus delicti of the offense charged.