UNITED STATES, Appellee

v.

CURTIS E. BROOKS, First Lieutenant, U. S. Army, Appellant

1 USCMA 88, 1 CMR 88

No. 18

Decided December 28, 1951

Col. M. W. Ludington, U. S. Army, and Mr. Robert C. Brouse, for Appellant.

Major George B. Springston, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

Petitioner, First Lieutenant Curtis E. Brooks, was tried and convicted by general court-martial for the offense of desertion with intent to avoid hazard-ous duty in violation of Article of War 58. He was sentenced on April 21, 1951, to dismissal from the Army, forfeiture of all pay and allowances to become due after the date of the order di-

recting the execution of the sentence and to be confined at hard labor for fifteen years. The convening authority and the board of review approved the finding and sentence. We granted review on petition by accused, directed to the following issues:

(1) Whether the specification was required to contain an allegation that the offense was committed in time of war.

(2) Whether the extract copy of the morning report (Exhibit 1) was admissible in evidence.

(3) Whether there was sufficient evidence to establish the corpus delicti.

In our disposition of this case we consider only issues (1) and (3) for the reason that our holding on the third issue makes it unnecessary to discuss the admissibility of the questioned document. We consider ▮▮▮▮ first the legal sufficiency of the specification under which petitioner was convicted. It reads as follows:

"In that, First Lieutenant Curtis E. Brooks, Company A 65th Infantry Regiment, did, in the vicinity of Noha-Dong, South Korea, on or about 0630 hours, 14 February 1951, desert the service of the United States by absenting himself without leave from his organization and place of duty with intent to avoid hazardous duty, to wit: imminent hostile contact with an armed enemy, and did remain absent in desertion until he surrendered himself to Provost Marshal I Corps at Chonan, Korea, on or about 1400 hours 14 February 1951."

The specification was laid under Article of War 58, which provides:

"Any person subject to military law who deserts or attempts to desert the service of the United States shall, if the offense be committed in time of war, suffer death or such other punishment as a court-martial may direct, and, if the offense be committed at any other time, any punishment, excepting death, that a court-martial may direct."

Further reference may be made to Article of War 28, which describes three of the possible types of desertion:

"Any officer who, having tendered his resignation and prior to due notice of the acceptance of the same, quits his post or proper duties without leave or with intent to absent himself permanently therefrom shall be deemed a deserter.

"Any soldier who, without having first received a regular discharge, again enlists in the Army, or in the militia when in the service of the United States, or in the Navy or Marine Corps of the United States, or in any foreign army, shall be deemed to have deserted the service of the United States; and where the enlistment is in one of the forces of the United States mentioned above, to have fraudulently enlisted therein.

"Any person subject to military law who quits his organization or place of duty with the intent to avoid hazardous duty or to shirk important service shall be deemed a deserter."

We are here concerned with desertion with intent to avoid hazardous duty. The specification follows exactly the form set out in the Manual for Courts-Martial, U. S. Army, 1949, Appendix 4. It is, however, contended by appellate defense counsel that Article of War 58 states two separate offenses: desertion in time of peace, and desertion in time of war. That being so, the existence of war or peace becomes a material element of the offense and must be particularly alleged in the specification. We do not agree with the premise or the conclusion. Nowhere in Article 28 does there appear any indication that there exist, as separate entities, the two offenses of peacetime and wartime desertion. Article of War 58 clearly states that the "offenses" described therein are desertion and attempted desertion. The phrases following prescribe the extent of permissible punishment.

We therefore conclude that the existence or non-existence of a state of hostilities is not a necessary element of the offense of desertion and need not be specifically alleged. This is in accordance with the rule enforced by the Judge Advocate General of the Army for the last thirty-nine years. Dig Op JAG, 1912–40, Sec 416(5), citing Dig Op JAG, 1912, p 489. This interpretation, while certainly ▮▮ not conclusive, is entitled to some weight in our determination of the question. Cf. Hiatt v. Brown, 339 US 103, 109, 94 L ed 691, 70 S Ct 495; United States ex rel. Hirshberg v. Cooke, 336 US 210, 216, 93 L ed 621, 69 S Ct 530.

We turn, then, to a discussion of the remaining issue: Whether there was sufficient evidence to establish the corpus delicti. It is the universal rule that an accused cannot be legally convicted upon his uncorroborated extra-judicial confession—there must be substantial evidence of the corpus delicti other than the confession. Forte v. United States, 94 F2d 236.

We have carefully considered the evidence in the record of trial. It is not necessary to give it in complete detail. In substance it shows that the accused was assigned to Company A of the 65th Infantry by the battalion commander and introduced to his company commander who briefed him on the tactical situation, designated him as platoon leader of the third platoon and thereafter introduced him in turn to the sergeants. The accused then took over at the third platoon command post.

During the night the company received enemy fire and the accused, at the request of his company commander and after having the situation explained to him, sent one of his squads to fill in a gap caused by the attack. The company commander next saw the accused on the day of the trial. The mission of the third platoon, of which the accused was the leader, was to attack on February 14 and his platoon sergeant last saw the accused at 0630 on that day. Prior to this attack the accused left his command post, went to the company kitchen where he was served breakfast before the rest of his platoon, and then "went out all the way down the road" away from the area. The accused was not present during the attack nor did he have the noon or evening meal in the area with his organization to which he had been duly assigned. The accused was next seen 50 miles away, seven hours later, when he approached an MP Captain and identified himself. The accused later made a confession after being advised of his rights under Article of War 24.

While the evidence given may not be as precise as could be desired, it is sufficient, as a matter of law, to establish the corpus delicti of the offense here charged. The confession of the accused was therefore admissible, and all the evidence in the case clearly establishes the guilt of the accused. To reach any other result would require us to deliberately ignore the plain evidence in this record of trial. The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.