UNITED STATES, Appellee

v.

JAMES W. CREAMER, Private First Class,
U. S. Air Force, Appellant

1 USCMA 267, 3 CMR 1

No. 179

Decided April 3, 1952

COL. Kenneth B. Chase, USAF, and CAPT. Benton C. Tolley, Jr., USAF, for Appellant.

COL. Wendell C. Dreier, USAF, and CAPT. William E. Shannon, USAF, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on petition for review granted on November 20, 1951, pursuant to the provisions of Article 67(b)(3) of the Uniform Code of Military Justice, 50 U.S.C. § 654. The petitioner was charged with desertion in violation of Article of War 58, 10 U.S.C. § 1530. The specification alleged that he deserted at MacDill Air Force Base, Florida, on or about January 17, 1947, and remained in desertion until termination thereof by apprehension at Baltimore, Maryland, on or about February 10, 1951. Upon trial by general court-martial, held at Bolling Air Force Base, Washington, D. C., on May 17, 1951, the accused pleaded not

guilty, but was found guilty of the charge and specification. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for 2 years. The convening authority approved, and on September 18, 1951, a board of review in the office of The Judge Advocate General, United States Air Force, affirmed the findings and sentence.

The period of desertion in Creamer's case was terminated when he was surrendered to the military authorities by Maryland officials who had been holding him in confinement for 3 months following conviction by a civilian court. Corporal Calvin C. Lewis, a member of the military police, was a witness for the prosecution—in fact the only witness who testified at the trial. After being subjected to thorough examination and cross-examination, his testimony remained unshaken as to the following matters, which furnish most of the information reflected in the record. Lewis, who at the time in question was a private first class—the grade held by the accused—went to the Maryland House of Correction, located in Jessups, Maryland, where the latter was being held, for the purpose of returning him to military custody at the Central Police Station in Baltimore. The witness testified that he was accompanied on this mission by one Cohen, also a private first class. The witness identified himself to the accused and informed him that they were to proceed to the Central Police Station in Baltimore. The trip to Baltimore was made by automobile, during the course of which the 3 men engaged in what Lewis characterized as "general conversation." Lewis testified that the accused opened the conversation by asking for a cigarette, and in the course thereof made the casual statement that he had absented himself without leave in 1945 or 1946. It appears that after this statement was made the witness asked in surprise, "How long did you say you were AWOL?" At this point petitioner repeated his previous statement and that phase of the conversation ended. Subsequently—not more than half an hour later, according to the testimony—and after arrival at their destination in Baltimore, the accused was advised of his rights under Article of War 24, 10 U.S.C. § 1495, and asked if he understood the Article. He replied that he did. Thereafter he was interrogated by Lewis. He stated that he had absented himself on December 6, 1945, from MacDill Air Force Base, Florida, and that he had lived in several places and had been occupied in various employments since that time. From notes taken at the time, Lewis then enumerated, over defense objection, certain of the places where and the persons for whom the accused reported he had worked during the unauthorized absence.

The Government's case under the specification and charge consisted of 5 principal elements: (1) An extract copy of a morning report entry calculated to establish the inception of the unauthorized absence alleged. (2) A further morning report extract copy reflecting the return of the accused to military control some 4 years later. (3) Corporal Lewis' testimony concerning the date and circumstances surrounding the same event. (4) The stipulated testimony of the Record Librarian, Maryland House of Correction, establishing the confinement of the accused by Maryland civilian authorities under an alias, the subsequent discovery of his true identity and his ultimate surrender to military authorities. (5) Certain extrajudicial admissions of the accused referred to briefly in the preceding paragraph, and reported to the tribunal through the testimony of Corporal Lewis. The accused did not take the stand for any purpose, and—apart from additional morning report extract copies to be mentioned hereafter—no evidence was offered in his behalf.

Appellate defense counsel argues that the court erred as a matter of law in its findings of guilty in that the record reflects no competent evidence to establish the desertion alleged. Specifically, the following grounds of error are assigned:

1. The extract copy of the morning report offered in evidence by the prosecution to establish the inception of the unauthorized absence of the accused was inadmissible.

2. The admissions or confession of the accused were inadmissible for the reason that there was no substantial evidence of the corpus delicti.

3. The admissions or confession of the accused were not admissible because they were involuntarily made.

Considering these assignments in the order mentioned, we shall first inquire whether the Government's morning report extract copy was admissible. This document, which was admitted over objection as Prosecution Exhibit 2 is an extract copy of the morning report for January 17, 1947, of Squadron CD, 326th AAF Base Unit, MacDill Field, Florida, of which the accused was then a member. The extract, which was certified by the official custodian thereof to be a true extract copy, contained an entry reading as follows:

"17 January 1947

• • • • • •

Creamer James W RA 35 616 329 Pfc 824 Fr AWOL to dropped fr rolls this orgn this date records and A/P forwarded to Wash DC IAW AR 615–30

• • • • • •

/s/ Raymond E. O'Donnell
1st Lt Air Corps"

Prior to the introduction of this exhibit, the court-martial at the request of the trial judge advocate had judicially noticed certain Army regulations which were in effect at the time the foregoing entry was made (Prosecution Exhibit 1). These regulations, Changes No. 9 to AR 615–300, provided in pertinent part as follows:

"*Enlisted Men—Absence without Leave and Desertion*

• • • • • •

6. Status of Absentees:

• • • • • •

b. Unit in United States

(1) An absentee from an organization in the United States will be dropped from the rolls—

(a) At the expiration of one month from date of absence, or . . . ."

Following the admission of the extract copy of the morning report of

January 17, 1947, the defense offered and the court admitted 2 additional morning report extract copies. The first is dated December 16, 1946, and reads as follows:

"16 December 1946

• • • • • •

Creamer James W. RA 35 616 329 Pfc Above 6 EM fr dy to AWOL 1300 Hours

• • • • • •

/s/ Raymond E. O'Donnell
1st Lt Air Corps"

The contents of the second, dated the following day, are set out below:

"17 December 1946

• • • • • •

Correction M/R 16 Dec 46

• • • • • •

Creamer James W RA 35 616 329 Pfc Above 6 EM fr dy to AWOL 1300 hours Should Be Deleted

• • • • • •

/s/ Raymond E. O'Donnell
1st Lt Air Corps"

It is urged by appellate defense counsel that Prosecution Exhibit 2, dated January 17, 1947, which was used to establish the inception of the unauthorized absence charged, was, in view of pertinent Army regulations, based on the earlier entry of December 16, 1946, which initially reported the accused in an absence-without-leave status. But this entry, the argument continues, having been characterized as erroneous and deleted in the entry of December 17, 1946, it follows that the entry of 30 days later relied on by the prosecution is likewise erroneous, and should have been excluded as demanded by defense counsel at the trial. It appears, in short, that the view of appellate defense counsel is that the court erred in receiving Prosecution Exhibit 2 in evidence not upon the ground of a want of authentication, or for any similar reason, but rather because the entry reflected therein is simply erroneous. The Government, on the other hand, takes the position that the entry contained in Prosecution Exhibit 2 is competent prima facie evidence of a

fact reported therein, namely that the accused was in a status of absence without leave on January 17, 1947.

At the outset it is necessary to distinguish between 2 questions relating to Prosecution Exhibit 2. The first of these has to do with the admissibility of the document in evidence, and the second with the weight or credit to be given its contents by the court-martial. In light of the nature and scope of appellate review in this Court, it is apparent that we are concerned with only the first of these problems. Considering this question we find ourselves in agreement with the position of the Government and regard that of appellate defense counsel as without merit.

It is a familiar rule that to be admissible in evidence a morning report ▮ must comply with the requirements of what is ordinarily characterized as the official statements exception to the hearsay rule. It is also a firmly established doctrine of military law that morning reports, as official records, are admissible as an exception to the hearsay rule. See United States v. Simpson, 2 CMR (AF) 445. The basis for this principle is given expression in Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 130b:

"An official statement in writing (whether in a regular series of records or a report) concerning a certain fact or event is admissible in evidence when the officer or other person making the writing had an official duty, imposed upon him by law, regulation or custom to record the fact or event and to know, or to ascertain through customary and trustworthy channels of information, the truth of the matters recorded. Any such record, including an official record compiled from mere notes or memoranda or from other official records, is competent prima facie evidence of the fact or event, without calling to the stand the officer or other person who made it. For instance, the original of an enlistment paper, physical examination paper, outline-figure and finger-print card, guard report, individual equipment record, service record, and *morning report* are competent evidence of the facts recited in them, except as to entries therein which the recording official obviously had no duty to record or concerning which he obviously had no duty to know or ascertain the truth." (Italics supplied)

This Court considered the morning report problem at length in United States v. Masusock, (No. 15), 1 US CMA 32, 1 CMR 32, decided November 9, 1951, where the following words were used:

"These reports meet all tests required in an official record. The commanding officer of the unit has an official duty to perform and he is required to know or to ascertain through customary and trustworthy channels of information the truth of the facts or events recorded. The records thus made by him are competent prima facie evidence of the facts or events without calling him to the stand to testify. [citing authorities] Furthermore, there is a presumption that the records emanating from official unit sources are the records required by regulation to be kept and that the person recording even though not shown as the commanding officer knew or had the duty to know or ascertain the truth of the facts or events recorded. Courts have long indulged in the legal presumption of regularity in the conduct of governmental affairs. [citing cases] In the absence of a showing to the contrary, this Court must presume that the Army and its officials carry out their administrative affairs in accordance with regulations and that morning reports reach the level of other official documents."

The record discloses that no objection was made at the trial to the reception in evidence of Prosecution Exhibit 2 on the ground of lack of authentication. See Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 129b. Nor was objection made on the ground that the officer who made the entry was not the official charged with the duty of knowing or ascertaining through customary and appropriate channels the truth of the matter recorded. No is-

**271**

sue on either of these grounds has been raised on appeal, and the record contains no suggestion of irregularity on either of these bases. The only substantial question, therefore, concerning the admissibility of the document offered in this case is whether it was made pursuant to Army regulations in effect at the time of execution. We find no reason to suppose that it was not so made, and our attention has been directed to none by counsel.

It is important to observe that the deletion of the entry of December 16, 1946, by action taken the following day does not necessarily imply that the accused had not been absent from his organization during the 30-day period contemplated by the Army regulations quoted in a preceding paragraph of this opinion. No evidence was offered to show his presence in fact; indeed the record is bare of even the faintest suggestion that this may have been true. At most, it seems to us, the deletion of the entry of December 16 merely removed one possible basis on which the officer making the entry extracted in Prosecution Exhibit 2 could conceivably have acted. Moreover, there is no showing that reliance was in fact placed on the December 16 entry in making that of January 17, 1947. In addition, we find no basis for believing that an earlier entry reporting absence without leave status is an indispensable prerequisite to subsequent valid action in dropping an airman from the rolls of an organization. Certainly Army regulations do not so provide, and no such suggestion has been made by counsel. It follows that, in the absence of proof of presence during the 30-day period, we must believe—in accordance with the presumption of regularity operative in this area— that the officer making the entry of January 17 acted pursuant to an official duty imposed by regulations. We must believe, too, that he knew, or ascertained through appropriate sources, that the accused had been unauthorizedly absent for one month, and was in fact absent at the time the entry dropping him from the rolls was made.

All of this demonstrates our opinion

272

that the extract under scrutiny was properly admitted as an official statement, and was therefore competent prima facie evidence of the truth of the matters reflected therein. One of these— the only item of concern in this case— was the fact that as of the date of the entry, January 17, 1947, the accused was in an absent-without-leave status. It is deceptive to argue that the questioned exhibit was inadmissible because of the "purely administrative character" of the entry it contains. All morning report entries are administrative in nature. Some such are admissible in evidence and some are not. However, their administrative character has nothing to do with the determination. Rather this depends on utterly different considerations, most of which have been dealt with earlier herein. In view of our determination that Prosecution Exhibit 2 was properly admitted in evidence, it follows that the 2 morning report extract copies introduced by the defense went only to the weight or credibility to be accorded by the court-martial to the prosecution item under scrutiny. We have already stated our view that this latter aspect is not a matter for our consideration.

Since Prosecution Exhibit 2 was admissible in evidence, it was competent to establish, prima facie, the date of the inception of the accused's, Creamer's, absence without leave. Once having been shown to exist, this unauthorized absence may be presumed to have continued—in the absence of evidence to the contrary—until his return to military control, as established through the testimony of Corporal Lewis and by Prosecution Exhibit 5. See Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 146a.

Turning to the second assignment of error, we come to inquire whether the record discloses substantial evidence of the corpus delicti to support the court-martial's acceptance of testimony concerning declarations of the accused in the nature of admissions or a confession. Assuming that the rule invoked has application to the offered state-

ments, we are sure that the record does contain such evidence. His prolonged absence without leave—from January 17, 1946, to February 10, 1951—together with the manner and place of its termination, are factors from which the court could have reasonably inferred the requisite intent to remain away permanently. Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 146a. Accordingly, it is clear that there was sufficient evidence at this stage of the proceedings to sustain a finding of guilty of the offense charged. See discussion by this Court in United States v. McCrary, (No. 4), 1 USCMA 1, 1 CMR 1, decided November 8, 1951. Recalling that the evidence of the corpus delicti need not be sufficient to convince beyond reasonable doubt, or even—under the terms of the Manual in force at the time of Creamer's trial— "need not cover every element of the charge," it follows beyond peradventure that there is in the record substantial "evidence, either direct or circumstantial, that the offense charged has probably been committed." Manual for Courts-Martial, U.S. Air Force, 1949, paragraph 127a. See United States v. Uchihara, (No. 60) 1 USCMA 123, 2 CMR 29, decided February 4, 1952; United States v. Brooks, (No. 18), 1 USCMA 88, 1 CMR 88, decided December 28, 1951. It follows, that the second assigned error is without merit, and only the question of voluntariness of the accused's admissions remains.

It is the defense position that the original admission of the accused, made during the course of transportation to Baltimore, was inadmissible for want of voluntariness, and that his subsequent damaging declarations, although made under formal interrogation, after appropriate reference to Article of War 24, supra, and otherwise acceptable, were likewise inadmissible because tainted by infirmities in the initial statement. It is urged that the original declaration was involuntary because made to a uniformed air policeman, who identified himself as such, and who had not at the time warned the accused of his rights under Article of War 24, supra. We are not impressed by these arguments. The testimony of Corporal Lewis that the accused's initial remark was volunteered and unsolicited was explicit, was unshaken under vigorous cross-examination, and was wholly uncontradicted. It must be accepted by us as it palpably was by the members of the court-martial. Thus we are required to ask whether an unrequested disclosure freely made during the course of a friendly and aimless conversation by an accused person to one of the same military grade is necessarily inadmissible as involuntary by virtue of the fact that the latter is a member of the military police. We think that it is not. Two passages from the Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 127a, appear to be relevant. The first deals with statements made to an investigator:

"The fact that a confession or admission otherwise admissible was made to an investigator during an investigation of a charge does not make the confession or admission inadmissible."

The second has to do with unsolicited disclosures by an accused and reads as follows:

"If it appears that the accused made a confession or admission spontaneously and without urging or request, as when the accused, a private, makes an incriminating statement to a friend, another private, the statement may be regarded as voluntary."

We do not mean to exclude the possibility of inherent pressure in every situation roughly analogous to the present one. Conclusions may differ with facts. We mean merely to say that it is not necessarily present, and that a reading of the entire record does not suggest its existence here. It follows that no taint may be said to have attached to the accused's more elaborate disclosures in Baltimore after appropriate warning, and that the law member did not err in admitting testimony reporting them for the consideration of the court-martial. Accordingly, the

decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.