UNITED STATES, Appellee

v.

JOHN F. PARLIER, Recruit, U. S. Army, Appellant

1 USCMA 433, 4 CMR 25

LT. COL. James C. Hamilton, USA, and 1ST. LT. James A. Hagan, USA, for Appellant.

LT. COL. Paul J. Leahy, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case involves the admissibility in evidence of an otherwise acceptable morning report extract copy in the absence of a notation thereon of the signature of the officer authenticating the original morning report entry.

The accused, Parlier, was tried at Fort Sam Houston, Texas, on August 14, 1951, under a specification alleging desertion from July 5, 1943, until termination by return to military control on December 22, 1950, in violation of Article of War 58, 10 USC § 1530. He was found guilty as charged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for 5 years. The convening authority reduced the period of confinement to 4 years but otherwise approved. The record of trial was considered by a board of review in the office of The Judge Advocate General, United States Army, which on October 3, 1951, affirmed the findings and the sentence as modified. Thereafter the accused petitioned this Court for review, assigning as error the admission at the trial of Prosecution Exhibit 1, Extract Copy of Morning Report. We granted review on March 3, 1952.

Since the record of trial contains no other evidence of the inception of petitioner's alleged unauthorized absence, the legal propriety of the findings of guilty must depend on the admissibility in evidence of the challenged exhibit, a duly authenticated extract copy of the morning report of Company M, Infantry Regiment Rifle Cadre (PCD3h), Camp Livingston, Louisiana, dated July 14, 1943. The entire extracted portion of the morning report of Company M reflected in Prosecution Exhibit 1 reads as follows:

"Pvt Parlier duty to AWOL 0600 5 July 1943"

The certificate of the custodian borne by Prosecution Exhibit 1, W.D., A.G.O. Form No. 44, January 18, 1943, was signed by First Lieutenant Lee M. Nance, Personnel Officer, and also reads as follows:

"I . . . certify that I am the Personnel officer of Inf Regt Rifle Cadre (PCD3h) and official custodian of the morning reports of said command, and that the foregoing is a *true* and *complete* copy *(including any signature or initials appearing thereon)* of that part of the morning report of said command submitted at Camp Livingston, La. for the dates indicated in said copy which relates to Pvt John F Parlier 6359817, Inf Regt Rifle Cadre (PCD3h)." [Emphasis supplied]

The Manual for Courts-Martial, United States, 1951, paragraph 164a, page 313, treating of proof of desertion, provides as set out hereafter:

"Absence without leave is usually proved, prima facie, *by entries in the morning report* in the case of the Army and Air Force and by entries in the service record or unit person-

**434**

nel diary in the case of the Navy, Marine Corps, and Coast Guard." [Emphasis supplied]

In keeping with the method described in the preceding quotation as standard practice—and following arraignment of petitioner—trial counsel offered in evidence Prosecution Exhibit 1, described earlier herein. Immediate and active objection was interposed by defense counsel on the theory inter alia that "The extract, or alleged extract of the morning report is not signed by anyone, and the certificate to the copy specifically states that the extract includes any signatures appearing on the morning report itself." After extended argument and citation of authorities, the objection was overruled and the extract copy was admitted by the law officer principally on the authority of United States v. Hatfield, 25 BR(ETO) 291. Thus the question of alleged error by the law officer was squarely raised by defense counsel at the trial and fully preserved for consideration by this Court.

It is universally recognized that official records fall within the official statements exception to the hearsay rule. Whenever there is a duty to record official doings, the record thus kept is admissible. Wigmore, Evidence, 3d ed., § 1639. Morning reports are part of the Army's official system of personnel record keeping. They are, according to Army regulations, a "daily statistical, personnel, and historical record of an organization of the Army." SR 345–400–1, October 12, 1949, Section I, paragraph 1. It is a firmly established doctrine of military law that morning reports, as official records, are admissible as an exception to the hearsay rule. United States v. Masusock, (No 15), 1 USCMA 32, 1 CMR 32, decided November 9, 1951; United States v. Creamer, (No 179), 1 USCMA 267, 3 CMR 1, decided April 3, 1952; Manual for Courts-Martial, United States, 1951, paragraph 144b, page 265. It is also widely agreed that extract copies of such records—including morning reports—authenticated by the officer having cus-

tody thereof are likewise admissible in evidence as duplicates of the original records, which in the ordinary case must remain in official files. This has long been the rule in both military and Federal civilian courts. The rule applicable in Federal civilian courts was announced long since in Stebbins v. Duncan, 108 US 32, 27 L ed 641, 2 S Ct 313. The service rule is stated in the Manual for Courts-Martial, supra, paragraph 143a, page 258. See also United States v. Masusock, supra; United States v. Clements, (No 82), 1 USCMA 39, 1 CMR 39, decided November 14, 1951.

We have observed in the preceding paragraph that an original morning report entry, otherwise acceptable, is admissible in evidence to establish the truth of the matters recited therein, and the same is true of an otherwise acceptable extract copy thereof. The question of acceptability otherwise must now receive consideration. It must be recognized that an offered document may belong to a general category admittedly acceptable under the official statements exception to the hearsay rule, yet in the particular case it may be inadmissible for any one of a variety of reasons. See Wigmore, Evidence, supra, § 1637. Certainly it must be genuinely what it purports to be. It must indeed be authentic and, unless waived, it must be formally authenticated. See Manual for Courts-Martial, supra, paragraph 143b, page 261. It must be an *official* document. See Wigmore, Evidence, supra, § 1672. Approaching more closely the problem before us here, the official record must be one which has been kept and prepared in conformity to law and regulations. See United States v. Masusock, supra; United States v. Creamer, supra. Army Regulations No. 345–400, May 7, 1943, in force at the time of the inception of the absence without leave alleged in the case at bar, contains in paragraph 6 the provision set out below:

"Authentication.—*Signature.*—The company morning report and/or the headquarters morning report will be authenticated by the commanding officer, adjutant or any officer designated by the commanding officer. The

**435**

name, grade, organization and arm or service will be typed or otherwise printed in the space provided on the signature line."

It thus appears that a legal principle of general acceptance requires authentication of the genuineness of an offered official record. Additionally—and more specifically—it is apparent that Army regulations demand a certain sort of authentication in the case of an original morning report. The morning report extract copy proffered in the instant case—certification of which as a true and complete copy by the custodian of the original is unchallenged—does not reflect authentication of that original in conformity to Army regulations. Was the extract copy admissible in evidence? At first blush, at least, it appears that it was not, and this must be our final conclusion unless the copy is to receive the benefit of the presumption of regularity—or some equally serviceable principle of salvation. Shall this saving grace be accorded the questioned exhibit? It is to be observed that this issue is markedly dissimilar to that involved in the Masusock and Clements cases, supra, and—like most of our current cases—is a matter of distinctly first impression for this Court.

We find that two of the armed services have taken conflicting views with respect to the applicability of the presumption of regularity in the solution of the problem involved in the case at bar. Army boards of review have held in cases indistinguishable from the present one that, in the absence of an affirmative showing to the contrary, it will be presumed that there was conformity to regulations and that the original entry was properly signed. This rule was laid down in United States v. Hatfield, supra, relied on by the law officer at the trial of the instant case. In the course of its opinion in the Hatfield case the board of review said at page 293:

". . . it is the opinion of the Board of Review that the extract copy of the morning report was properly admissible and competent to prove the absence without leave for the

period alleged. It is presumed in the absence of evidence to the contrary that the original, of which the extract was but a copy of a *part,* was regular and signed in another and proper part by an officer competent to sign it, and cognizant of the facts therein contained."

An application of the same doctrine is found again in United States v. Vance, 71 BR 415. But see United States v. Alvarado, 80 BR 1. It does not appear explicitly from the report of the board of review's decision in the Vance case, supra, that the court-martial there considered an extract copy form containing the identical certificating language used in the one now before this Court. It is, therefore, conceivable that a specific reference to "signature or initials" was not contained in the extract copy before the board there, although the decision refers to the use of "true and complete" in the custodian's certificate utilized in the trial of that case. However, in view of the relevant A.G.O. Form in general use at the time of the Vance trial, it is highly probable that an extract copy form identical to the one before us now was used. Certainly this seems to have been the view of both Government and defense counsel at the hearing of the instant case. It clearly appears from the decision in the Hatfield case, supra, that the "signature or initials" phrase was included in the custodian's certificate involved there.

Air Force boards of review, on the other hand, in their consideration of this question, have adopted a doctrine at variance with the rule announced in the Vance and Hatfield cases, supra. These boards have consistently refused to indulge in the presumption of regularity in view of the express language of the custodian's certificate that the extract is *complete* as well as true, and that it includes "any signature or initials appearing thereon." The Air Force view is well stated in United States v. Romero, [ACM 2284] 2 CMR (AF) 504, at page 506:

"Examination of the authenticating certificate of Prosecution Exhibit 2, hereinbefore set forth, indicates the extract reflects all signatures and

436

initials appearing on the original morning report. Actually the extract contains only the initials 'KV' and therefore it must be accepted that only these initials and not any signature appeared on the original. The objection of the defense and the exhibit itself then present the question whether or not the original morning report was prepared and signed in accordance with existing regulations, which would give it official status and authorize the admission in evidence of the extract copy thereof. The pertinent regulation in effect 2 July 1943 was AR 345–400, dated 7 May 1943, and paragraph 6 of said regulation requires the morning report to be *signed* by the commanding officer, adjutant or an officer designated to *sign* such reports by the commanding officer. Obviously, from Prosecution Exhibit 2, the original morning report was not signed as required by regulation then in force (but instead was initialed) and therefore could not be deemed an official record admissible as such as an exception to the general hearsay rule (ACM 35, Bourque, 1 CMR 36; Alvarodo [sic], supra; for holding on regulations in effect prior to 7 May 1943, see ACM 28, Burkhammer).

"Can admission of the extract then be considered under any other rule of evidence? The entry, whether made as required by law or regulation, if made in the regular course of business, is admissible under the 'shop book rule' if the proper basis of proof is first introduced. However, where the procedure followed in making the entry is not as required by regulation or law, in the absence of affirmative showing that the entry was made in the 'regular course of business' and according to the procedure of the organization which prepared it, it is not admissible as evidence (Bourque, supra). Inasmuch as the evidence as to the initial absence was improperly before the Court, and there being no other evidence in the record as to that element of desertion, the findings of guilty by the Court cannot be sustained."

The rule was again announced in

United States v. Ballew, [ACM 2237] 2 CMR (AF) 588; United States v. Martin, [ACM S–616] 3 CMR (AF) 291; and United States v. Ledger, [ACM S–574] 3 CMR (AF) 232. In the Ledger case the following language was used by the board at page 235:

"The Board of Review in the Romero case rejected the presumption employed in the Vance and Hatfield cases, in view of the certificate that the extract copy included any signature or initials appearing on the original morning report. In Romero, the initials appearing on the original morning report as extracted affirmatively indicated that the original morning report was not signed, and thus further demonstrated the inappropriateness of such a presumption. Even without such corroboration, the presumption that the original morning report was properly signed is unrealistic and unwarranted in the face of a certificate to the extract copy stating, in effect, that such signature, if any, is included in the extract. Nor is there sufficient evidence in the instant case to permit the extract copy of the morning report to be received in evidence under the 'Shop Book Rule'. We therefore hold that Prosecution Exhibit 6 was improperly received in evidence. Since it is the only evidence relating to the inception of the absence without leave, its inadmissibility results in a failure of proof of the offense charged."

It is to be observed that the Romero and Ledger cases, from which quotations are set out above, differ slightly in facts. In the former the extracted portion of the original morning report contained the authenticating officer's initials, whereas applicable regulations required a signature. In Ledger, however, as in the case at bar, neither initials nor signature appeared. It may be said, therefore, that in Romero the extract copy was irregular on its face, which was not the case in Ledger. In our opinion this factual difference is immaterial for present purposes. We believe that the case at bar is to be distinguished in no substantial respect from the Romero and Ledger cases, supra, and, for the reasons set out in the

**437**

immediately preceding quotations, we adopt the solution of the present problem reached in them. We hold, therefore, contrary to the action of the board of review in this case, that the law officer erred in admitting in evidence Prosecution Exhibit 1, Extract Copy of Morning Report. In doing so we are aware of no inconsistency with our holding in United States v. Masusock, supra, which is clearly distinguishable on its facts.

There being no other evidence of the inception of the period of desertion alleged against petitioner, it follows that the decision of the board of review must be reversed. Accordingly, the record of trial is returned to The Judge Advocate General, United States Army, for action not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.